J-A08029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NATIONSTAR MORTGAGE, LLC, D/B/A CHAMPION MORTGAGE COMPANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| LEE AUDREY WILLIAMS AND GEORGE E. WILLIAMS | |
| APPEAL OF: LEE AUDREY WILLIAMS | No. 1742 EDA 2015 |

Appeal from the Judgment Entered May 4, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): July Term, 2013 No. 4566

BEFORE: BOWES, OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 12, 2016**

Appellant, Lee Audrey Williams, appeals from the judgment entered on May 4, 2015 in the amount of $121,696.33 in favor of Nationstar Mortgage, LLC, d/b/a Champion Mortgage Company (Nationstar) in a reverse mortgage foreclosure action. Upon review, we affirm.

The trial court summarized the facts of this case as follows:

> Ida J. Williams [(Mother)], now deceased, was the holder of a life estate in real property located at 5918 Larchwood Avenue, Philadelphia, Pennsylvania ("[p]roperty"). [Mother's] son, George Williams, and her daughter, [Appellant], held remainder interests in the [p]roperty. On September 17, 2008, [Mother] appointed [Appellant] her attorney-in-fact under a durable power of attorney [POA]. On February 19, 2010, [Appellant], executing her authority under the [POA], and on behalf [Mother], executed a [h]ome [e]quity [c]onversion [m]ortgage, commonly referred to as a reverse mortgage. At the time, [Appellant] was sixty years old and did not qualify for a reverse mortgage as they are available only to homeowners aged

*Retired Senior Judge assigned to the Superior Court.

sixty-two and above. [12 U.S.C.A. § 1715z-20(a) and (b) (defining eligibility requirements for participation in reverse mortgage market as "any homeowner who is, or whose spouse is, at least 62 years of age or such higher age as the Secretary [of Housing and Urban Development (HUD)] may prescribe"); 24 C.F.R. § 206.33.]

Reverse mortgages are administered by [HUD] and are insured by Section 255 of the National Housing Act. In a reverse mortgage, loan proceeds are paid out in accordance with a payment plan selected by the [b]orrower. If the lender becomes unable to make payments to the [b]orrower, the Secretary [of HUD] assumes responsibility for making the payments. The mortgage proceeds paid by the lender and/or HUD are secured by direct and second mortgages on the property. The obligation to satisfy the loan secured by the mortgages is deferred until the death of the [b]orrower, the sale of the home, or the occurrence of other events specified in regulations of the [HUD] Secretary. After certain qualifying events have occurred, the reverse mortgage is paid in a single payment.

Here, the reverse mortgage executed on February 19, 2010 was between [Mother] (Borrower) and Bank of America, N.A. (Lender) and the Secretary of [HUD]. On the same date, in connection with the reverse mortgage, [Appellant], exercising her authority under the [POA], and on behalf of [Mother], signed a mortgage and note to Bank of America, N.A. ("Bank of America"). The mortgage secured the repayment of the debt evidenced by the note, including all future advances, with interest at a rate subject to adjustment, and all renewals, extension and modifications of the note, up to a maximum principal amount of $165,000.00. The mortgage to Bank of America was recorded on November 25, 2013[.] On the same date, in connection with the reverse mortgage, [Appellant], exercising authority under the [POA], and on behalf of [Mother], signed a second mortgage and note with the Secretary of [HUD], as required by Section 255(i)(1)(A) of the National Housing Act to secure payments which the Secretary may make to or on behalf of the [b]orrower. The mortgage to the Secretary of [HUD] was recorded on March 9, 2010[.]

The full debt under the reverse mortgage, if not paid earlier, was due and payable on December 14, 2064. However, paragraph nine (9) of the mortgage to Bank of America provided, in relevant part, the following grounds for acceleration of [the] debt:

(a) Due and Payable. Lender may require immediate payment in full of all sums secured by the Security Instrument if:

(i) A Borrower dies and the [p]roperty is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the [p]roperty (or his or her beneficial interest in trust owning all or part of the [p]roperty) is sold or otherwise transferred and no other Borrower retains (a) title to the [p]roperty in fee simple, (b) leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or a life estate in the [p]roperty (or a beneficial interest in trust with such interest in the [p]roperty).

On December 28, 2010, [Mother] died. On November 21, 2012, a [m]ortgage [d]ue [and] [p]ayable [n]otification was sent to the [p]roperty advising that because of the death of [Mother], the reverse mortgage debt in the amount of $100,429.35 was due and payable within thirty (30) days of the date of the letter. On June 24, 2013, the mortgage to Bank of America was assigned to Nationstar [] by written permission. It was recorded on November 25, 2013[.]

On June 27, 2013, a [n]otice of [i]ntention to [f]oreclose [m]ortgage pursuant to Act 6 of 1974, 41 P.S. § 403m was sent to the [p]roperty by certified and first class mail notifying [Appellant] and George Williams of the default under the terms of the reverse mortgage, and the amount

- 3 -

to pay off the mortgage. On March 19, 2014, the mortgage to Nationstar was assigned back to Bank of America by a written assignment. It was recorded on April 14, 2014[.] Neither [Appellant] nor George William paid off the debt, nor did they attempt to sell the [p]roperty for 95% of its appraised value as permitted under HUD to satisfy the debt. On August 1, 2013, Nationstar filed a [c]omplaint in [m]ortgage [f]oreclosure against [Appellant] and George Williams. A non-jury trial was held on May 4, 2015. At the conclusion of the trial, [the trial court] entered judgment in favor of Nationstar in the amount of $121,696.33, foreclosing on [Appellant's] and George Williams's interest in the [p]roperty.

On May 14, 2015, [Appellant] filed a [p]ost-[t]rial [m]otion[.] [The trial court] denied the [p]ost-[t]rial [m]otion on May 29, 2015. On June 1, 2015, [Appellant] filed an appeal from the [] May 29, 2015 [o]rder. Pursuant to [the trial court's] directive, [Appellant] filed her [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal on June 16, 2015. [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 14, 2015.]

Trial Court Opinion, 9/14/2015, at 2-6 (bullet point format and record citations omitted).

On appeal, Appellant presents the following issues for our review:

1. Did the trial court commit an error of law by determining [Nationstar] was entitled to declare the reverse mortgage loan due and payable upon the death of [Appellant's] mother pursuant to paragraph 9(a) of the mortgage, when the property remained the principal residence of [Appellant]?

2. Did the trial court commit an error of law by determining that [Appellant] was not a "Borrower" within the meaning of the mortgage instrument, and determining that therefore, upon the death of [Appellant's] mother, the property did not remain the principal residence of a surviving borrower?

3. Did the trial court commit an error of law by looking beyond the mortgage instrument itself to construe the meaning of the term "Borrower" in the mortgage instrument?

4. Did the trial court commit an error of law and abuse its discretion by sustaining hearsay objections to [Appellant's] testimony that prevented her from establishing the basis for her equitable defense to foreclosure?

Appellant's Brief at 3-4 (suggested answers omitted).

We will examine Appellant's first three claims as presented in a single discussion as all of those issues center on the contention that the trial court erred by determining Nationstar was entitled to declare the reverse mortgage at issue due and payable upon Mother's death. Appellant avers that she was a surviving borrower and the property remained her primary residence under the plain, contractual terms of the reverse mortgage. *Id.* at 13-14. Appellant avers the trial court erroneously determined that Appellant was not a borrower despite her designation as such in the first paragraph of the mortgage instrument. *Id.* at 16. She claims the "mortgage contained separate signature lines with the three borrowers' [(Mother's, Appellant's, and George Williams')] names pre-printed below." *Id.* at 18. For support, Appellant relies on a Florida appellate decision, *Smith v. Reverse Mortgage Solutions, Inc.*, 2015 WL 4257632 (Fla. App. 3 Dist. 2015). *Id.* at 19-20.

Appellant criticizes the trial court's search beyond the definition of borrower set forth in the mortgage, including the court's examination of

other transaction documents. Appellant claims she was not a party to these instruments and, thus, it was improper to infer the contract's meaning from them. *Id.* at 17-18, 21. Appellant also points out that some documents name only Mother as a borrower, while other documents name all three family members as borrowers. As such, the trial court was required to construe these ambiguities against Nationstar as the drafter of the contract. *Id.* at 30. Appellant argues, "[t]he fact that [Mother] was the only 'borrower' on the promissory note, *i.e.* the only person personally liable for payment, did not mean that she was the only 'borrower' on the mortgage." *Id.* at 23. Appellant further claims that Mother had no duty to preserve the property for her children and, therefore, "[Nationstar] could have taken a mortgage from [Mother] alone without including the remainderpersons as parties thereto, without effecting the mortgage [and the] fact that [Appellant] **was** named as a borrower, when she did not have to be so named, confirms that the parties **intended** her to be so named[.]" *Id.* at 25 (emphasis in original). Likewise, Appellant argues Nationstar was not obligated under federal regulations to name Appellant as a borrower under the mortgage, but it did so anyway. *Id.* at 27-28. Thus, in sum, Appellant maintains the conditions precedent had not been met for Nationstar's foreclosure action. *Id.* at 15-16.

Initially, we note:

> Reverse mortgages have been described as a financial
> planning device for the elderly who are often house rich, but

cash poor. A reverse mortgage can address this dilemma by providing a means for converting home equity into cash. In a reverse mortgage, as in a conventional mortgage, the mortgagee or lender advances money to the borrower or mortgagor. However, in a reverse mortgage the borrower is often times not obligated to repay any portion of the loan or the interest on the loan amount until the property is sold, the loan matures or the borrower dies or experiences an extended absence from the premises. The interest on the borrowed sums is added to the principal loan amount and the lender acquires a lien against the house in the amount of the initial principal and accumulated interest.

*In re Estate of Moore*, 871 A.2d 196, 201 n.3 (Pa. Super. 2005) (internal quotations and citations omitted).

A reverse mortgage is a contract. Since contract interpretation is a question of law, "our review of the trial court's decision is *de novo* and our scope is plenary." *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94, 96 (Pa. Super. 2015). We previously determined:

The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more

- 7 -

than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

***Ramalingam v. Keller Williams Realty Group, Inc.***, 121 A.3d 1034, 1046 (Pa. Super. 2015) (citation and original emphasis omitted).

Here, the first paragraph of the reverse mortgage states:

The mortgagor is [Mother], as to the Life Estate interest and [Appellant] and George E. Williams as to the remainder, whose address is 5918 Larchwood Avenue, Philadelphia, Pennsylvania, 19143 ("Borrower").

Reverse Mortgage, 2/19/2010, at 1. While Appellant argues that this language shows that she was a borrower under the mortgage, we note that the mortgage uses the singular term "borrower" rather than the plural form of that word. In addition, at the end of the document, just above the signature lines, the mortgage reads, "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument[.]" ***Id.*** at 8. Again, the mortgage employs the term "borrower" in the singular. There is also a stand-alone signatory line, with Mother's name and Appellant listed as POA pre-printed below it. ***Id.*** Appellant, as POA, signed for Mother on this first signatory line. ***Id.*** Directly below the first signature are two additional signatory lines. Underneath those lines, Appellant's and George Williams' typewritten names appear and both are designated "REMAINDERMAN." ***Id.*** Both parties signed the agreement and handwrote "Remainderman" after their signatures. ***Id.*** Thus, while the

document does not explicitly define the term "borrower," the reverse mortgage instrument refers only to a single borrower.

Further, we reject Appellant's reliance on **Smith v. Reverse Mortgage Solutions, Inc.**, 2015 WL 4257632 (Fla. App. 3 Dist. 2015). Initially, we note that while the pronouncements of courts in sister states may be persuasive authority, those pronouncements are not binding on Pennsylvania appellate courts. **See Umbelina v. Adams**, 34 A.3d 151, 160 n.3 (Pa. Super. 2011). Further, the facts of **Smith** are markedly different from this matter. **Smith** dealt with a reverse mortgage taken out by husband and wife borrowers. The reverse mortgage "identifi[ed] Mr. Smith as 'a married man' and the mortgagor, [and] thereafter refer[red] to [him] as the "Borrower." **Smith**, 2015 WL 4257632, at *3. However, both spouses signed the mortgage. The Florida Court's decision was based, *inter alia*, upon the fact that Mr. Smith was specifically delineated in the mortgage as "a married man" and "Florida's Constitution[al] require[ment that] Mrs. Smith [sign] the mortgage to effectuate the lender's security interest in [the couple's] homestead property […] since Mr. Smith was married to Mrs. Smith at the time the mortgage was executed [and] only a deed containing Mrs. Smith's signature could validly convey her interest in the property." **Id.** at *4. Additionally, examining federal reverse mortgage law, the **Smith** Court recognized "Congress's clear intent to protect from foreclosure a reverse mortgagor's surviving spouse who is maintaining the encumbered

property as his or her principal residence." ***Id.*** at *5. Here, unlike Mrs. Smith, Appellant was not a necessary party to the mortgage. Appellant was not a surviving spouse and had only a remainder interest in the subject property. Under the intra-family transfer instrument through which Mother acquired her life estate interest in the property, Mother enjoyed the right to encumber the property freely and without the consent of George Williams or Appellant. ***See*** Intra-Family Transfer Agreement, 2/19/10, at 1 ("Grantors do hereby grant and convey unto [Mother], for her life, a life estate **with full powers of disposition and authority during her life to sell, convey, mortgage and otherwise dispose the entire estate in the [p]roperty (except by Last Will and Testament) without the consent or joinder of any remainderman, and to retain absolutely as her own, all of the proceeds thereof, thereby divesting the remainder granted by the Indenture, without liability for waste**") (emphasis added).

We also are not troubled by the trial court's examination of documents other than the mortgage agreement. As this Court previously determined, "[w]here several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." ***Huegel v. Mifflin Const. Co., Inc.***, 796 A.2d 350, 354-355 (Pa. Super. 2002) (citation omitted). Upon review of the certified record, most of the supporting documentation,

including the loan application, two promissory notes, HUD documents, a home equity agreement, and a certificate of reverse mortgage counseling identify only Mother as a borrower. On these documents, Appellant signed in her official capacity as POA for Mother, but did not sign these documents in her own right as a borrower.

We find, however, most compelling the ownership interest certificate, which stated as follows:

> If you have an ownership interest in the [] property but will **not** be a borrower under the proposed reverse mortgage, you need to be aware of the following:
>
> *          *          *
>
> If you continue to reside in the property after divestiture and the borrower predeceases you [], the reverse mortgage will become due and payable.

Ownership Interest Certificate, 12/22/2009, at 1. As POA, Appellant signed for Mother on a signatory line specifically designated as "Borrower." Appellant also signed the certificate in her own capacity, on a signatory line specifically designated as "Non-Borrowing Resident." Thus, Appellant explicitly acknowledged that she was a non-borrowing resident.

Based upon all of the foregoing, including construing all of the written instruments that are part of this one transaction, we conclude the trial court

did not err in determining Mother was the sole borrower under the reverse mortgage.[1] Hence, Appellant's first three issues lack merit.

Finally, in her fourth issue presented on appeal, Appellant argues the trial court committed an error of law and abused its discretion by sustaining Nationstar's hearsay objections to Appellant's testimony regarding an alleged equitable estoppel defense to foreclosure. Appellant claims that Nationstar "or its agents promised her, at the time of the loan origination, that she would not lose her home upon the death of her mother, and that [Nationstar] could not later foreclose in violation of that promise." Appellant's Brief at 31. She claims the trial court erred by excluding her testimony as hearsay and not subject to the admission of a party opponent exception to hearsay.[2] *Id.* Appellant further argues the trial court erred in concluding that she did not present evidence that the declarant was

_____

[1] We find further support in our interpretation from the federal regulations. In order to qualify for a reverse mortgage, "[t]he youngest mortgagor shall be 62 years of age or older at the time[.]" 24 C.F.R. § 206.33. Appellant was 59 years old at the time the mortgage. N.T., 5/4/2015, at 78. Appellant testified that she was aware that neither she nor her brother qualified for a reverse mortgage at the time of its origination. *Id.*

[2] At the foreclosure hearing, Appellant also argued that her testimony qualified under the state of mind exception to hearsay. N.T., 5/4/2015, at 68. However, in her brief to this Court, Appellant does not set forth any argument or relevant law pertaining to the state of mind exception. Thus, she has waived her prior contention. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Nationstar's agent or had authority to make promises to Appellant because, at trial, the trial court took judicial notice that there were representatives "from the mortgage company and from the lender" at the closing. *Id.* at 33.

We review a trial court's decision regarding the admission of evidence under the following standard:

> It is well established in this Commonwealth that the decision to admit or to exclude evidence [] lies within the sound discretion of the trial court. Moreover, our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1274 (Pa. Super. 2005).

The Pennsylvania Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). The rules further provide that "[h]earsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. The statement at issue is hearsay, as it was made out of court and was offered by Appellant to prove the truth of the matter asserted, *i.e.*, that the subject property would not be foreclosed upon in the event of Mother's death. It is therefore inadmissible unless an exception to the hearsay rule applies. *See* Pa.R.E. 802.

Rule 803(25) creates an exception to the hearsay rule for admissions by party-opponents and states, in pertinent part:

> **(25) An Opposing Party's Statement.** The statement is offered against an opposing party and:
>
> (A)  was made by the party in an individual or representative capacity;
>
> (B)  is one the party manifested that it adopted or believed to be true;
>
> (C)  was made by a person whom the party authorized to make a statement on the subject;
>
> (D)  was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]

Pa.R.E. 803(25).

"The proponent of an admission by a party-opponent under Rule 803(25)(D) must establish that the declarant was an employee of the principal at the time the statement was made, and the statement concerned a matter within the scope of employment." **Harris**, 880 A.2d at 1277 (citation omitted). Moreover,

> It is the responsibility of the judge [] to resolve preliminary factual questions which form a basis for the legal admissibility of evidence. These preliminary questions include whether evidence qualifies under an exception to the hearsay rule. In considering the admissibility of evidence, a trial court may properly consider credibility. Appellant, as proponent of the statement, bears the burden of proof and must convince the court that the hearsay statement is admissible as an admission of a party opponent.

\* \* \*

>Without this safeguard, parties could present to the jury any statements that they assert are admissions by their opponents, effectively gutting the hearsay rule.

*Id.* at 1278 (internal citations and quotations omitted). Bald statements that a declarant was an agent will not suffice. *Id.* at 1277 ("Beyond an approximate height and a characterization of the speaker as thin, Appellant provided no information about the declarant.").

On this issue, the trial court determined:

>Not only was [Appellant's] trial testimony vague, it was unaccompanied by any supporting evidence. The broker who allegedly made these promises was not called to testify at trial. In fact, [Appellant] did not provide [the trial court] with any other evidence to corroborate her claim either by other testimony from other witnesses, or written documents.

Trial Court Opinion, 9/14/2015, at 16.

Upon review, we discern no abuse of discretion in excluding the proffered testimony as hearsay, not subject to exception. Appellant could not identify the declarant with specificity. She testified "a Caucasian gentlemen" came to the subject property to discuss generally the reverse mortgage process, but Appellant did not "remember anything else about him." N.T., 5/4/2015, at 67. Later, Appellant testified that at the loan closing, she and her brother were there with "the loan people." *Id.* at 69. The trial court determined that Appellant's testimony was not credible, describing it as vague and without support. Without a description of the

- 15 -

individual(s) who allegedly made representations, Appellant could not establish an agency relationship. Finally, while the trial court took "judicial notice that [] at the closing, there [were] representatives there from the mortgage company and the lender[,]" it did not take judicial notice that those representatives were authorized to make the alleged statements or that the statements were made within the scope of that relationship. N.T., 5/4/2015, at 74. Thus, Appellant simply did not meet her burden of proof under Rule 803(25). Accordingly, we discern no abuse of discretion in excluding the proffered testimony and Appellant's final issue fails.

Judgment affirmed.

Judge Bowes joins this Memorandum.

Judge Strassburger files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2016