ESTATE OF Robert D. MOORE,
Deceased.

Appeal of: Betty A. Gaines, Administratrix of the Estate of Robert D. Moore, Deceased.

Superior Court of Pennsylvania.

Submitted Nov. 8, 2004.
Filed Feb. 22, 2005.
Reargument Denied April 26, 2005.

Tshaka H. LaFayette, Philadelphia, for appellant.

Harold Rosenthal, Philadelphia, for appellee.

BEFORE: LALLY–GREEN, OLSZEWSKI and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Betty A. Gaines,[1] administratrix of the estate of Robert Moore, deceased, appeals from the May 12, 2004 Decree which ordered specific performance of a written agreement for the sale of a condominium.

¶ 2 The following is a summary of the pertinent underlying factual and procedural history.[2] Moore died on January 4, 1999, intestate, unmarried and without issue. His two surviving sisters, Helen Cheeks and appellant Betty Gaines, are his heirs-at-law and next-of-kin under intestate laws. Moore had two assets at the

time of his death, a checking account and a condominium. The condominium is the subject of this litigation.

¶ 3 On April 13, 1999, appellant and appellee orally agreed that appellee, Dennis E. Waterman, who lived in the condominium next door to Moore's, would buy Moore's condominium for $132,500. At that time, appellee gave appellant a $100 check as a "deposit in good faith." The parties executed a written agreement of sale dated April 16, 1999.

¶ 4 The agreement provided, *inter alia:*

Seller at settlement shall grant and convey, by delivery of an executed warranty deed, good and marketable title to the Premises such as will be insured at regular rates by a reputable title insurance company free and clear of all liens, encumbrances and easements.

Petitioner's Exhibit 2, para. 2.

It is contemplated Seller will deliver the Unit to Purchaser on or before May 4th, 1999 or such reasonable time thereafter ('Estimated Settlement Date').

*Id.,* para. 5A.

Settlement shall take place at a time and place as specified by the Purchaser. Purchaser shall notify Seller of the time and place for settlement in writing at the address of Purchaser at least ten days prior to the date of settlement.

*Id.,* para. 5C.

Should Purchaser default under any of the terms, covenants or conditions of this Agreement of Sale, including completing the Settlement pursuant to notice as provided, Seller's exclusive remedy will be to retain all Deposit Moneys paid by Purchaser as liquidated dam-

---

1. Appellant's name is spelled both "Betty" and "Bettye" in the record. It is unclear which is correct.

2. The orphans' court sets forth the factual history in greater detail. *See* Trial Court Opinion, 5/12/04, O'Keefe, J., at 5–24.

ages for such breach. In such event, this Agreement shall become null and void, and the Parties shall have no further rights, duties, or obligations.

*Id.*, para. 7.

The agreement also required appellee to pay a $6,525 deposit to be held in escrow by his attorney, Harold Rosenthal, which he did on April 19, 1999, and it provided that the balance was to be paid at settlement. Also on April 19, 1999, Rosenthal wrote a letter to appellant advising her appellee had made the deposit, advising her that she must establish the Estate of Robert Moore through the office of the Register of Wills, and advising her to obtain counsel. Previously, in March 1999, appellant had gone to the office of the Register of Wills and applied for letters of administration of the estate, but the letters were not issued at that time because appellant had forgotten the last four digits of her social security number.

¶ 5 Rosenthal ordered title insurance on the pending sale from SearchTec Abstract, Inc. (SearchTec). SearchTec acted as agent for First American Title Insurance Company of Valley Forge, Pennsylvania, when it issued its "Commitment to Insure Title," also known as a "Title Report."

¶ 6 On May 10, 1999, Rosenthal wrote a letter to appellant confirming that settlement, which was to be held on May 4, 1999, was not held because the Estate of Robert Moore had not yet been raised. He also included a copy of the title report, noting that it required the raising of the estate as well as several other items before settlement could occur. Rosenthal again suggested appellant should obtain counsel and requested that her counsel contact him when all the requirements to convey good title have been met since settlement could not occur until that time. Rosenthal specifically stated, "When I am informed you are prepared to convey good title we can schedule a mutually convenient time for settlement. I will wait to hear from your counsel." Respondent's Exhibit 11, at 3.

¶ 7 Appellant left for Canada on May 15, 1999 and did not return until late in November 1999. She authorized her daughter Kim Gaines (Gaines) to represent her in communicating with appellee and his counsel during her absence. Gaines worked as a secretary in the law firm of Delany & O'Brien and told Rosenthal that an attorney at that firm would be handling settlement for appellant.

¶ 8 On July 15, 1999, Gaines obtained from the Register of Wills the letters of administration appointing appellant as administratrix of Moore's estate.

¶ 9 On July 30, 1999, Rosenthal wrote a letter to Gaines at Delany & O'Brien, and enclosed an addendum to the written agreement of sale. The addendum stated:

WITNESSETH the SELLER and BUYER mutually agree paragraph 5 of the Agreement of Sale, calling for Settlement "on or before May 4, 1999 or reasonable time thereafter" is extended as follows:

SETTLEMENT will be held on or before September 30, 1999.

All other terms and conditions of the Agreement of Sale are hereby ratified and remain in full force and are unaffected by the above modifications.

Petitioner's Exhibit 3. Rosenthal's July 30, 1999 letter to Gaines further stated:

I understand you will immediately send the Addendum to your mother for her signature and return. To save time I am sending a copy of the Addendum to Dennis E. Waterman [appellee] for his signature. We will exchange the signed documents as soon as you have received your mother's copy.

As we have discussed I changed the date to September 30, 1999.

However, I would like to have Settlement prior to my leaving for vacation on August 16th. I gave the title company the proof of appointment of your mother as personal representative which you sent me July 28th. As soon as I have their report I will forward it to you.

I am pleased to hear an attorney in your firm will be handling the matter.

Respondent's Exhibit 4. Appellee signed one copy of the Addendum on August 2, 1999. Appellant signed another copy of the Addendum on August 10, 1999.

¶ 10 Also in August 1999, SearchTec sent a copy of its title report to appellant, Rosenthal, and appellee. Schedule B, Section I of the title report explicitly requires that SearchTec be presented with a deed from appellant as administratrix of the estate, to appellee, which deed must be "approved, executed, delivered and filed for record." Schedule C of the report included a recital of language that was required to be in the deed:

And at an Orphans' Court held at Philadelphia as of No. _____ of 19___, upon Petition of the said Bettye A. Gaines, Administratrix of the Estate of Robert D. Moore, deceased, for leave to enter security in said Court, and thereafter to receive the proceeds of the sale of the said real estate, the Court fixed security in the sum of $___, and authorized the said Administratrix, aforesaid, to enter security in that amount which security has been duly entered.

Petitioner's Exhibit 5, Schedule C. Along with the title report, SearchTec also sent to appellant a deed and an authorization for Kim Gaines to go to settlement and receive the proceeds of the sale on her behalf. The deed contained the same "recital" language as the title report, and which is set forth above.

¶ 11 Appellant received these documents while in Canada and discussed them with a Canadian attorney friend of hers, Ray Harris. She did not recall the recital language and did not recall discussing that language with anyone. She signed the deed in space provided for the administratrix. Harris signed in the space provided for the notary public. The deed lacks a stamp indicating the name of the notary public and the date on which his or her commission expires. She returned the documents to SearchTec.

¶ 12 On September 1, 1999, Rosenthal sent a letter to Kim Gaines at Delany & O'Brien. In it he stated:

I just returned from vacation and was pleased to find the executed addendum you had mailed on August 23. With your help we are finally making headway.

I enclose the title report which contains requirements for both the buyer and seller. You had mentioned an attorney in your firm would be handling settlement. Please have your attorney review the report and call me.

Kindly contact me when you are ready to schedule closing.

Respondent's Exhibit 5.

¶ 13 On September 4, 1999, Rosenthal sent another letter to Gaines at the law firm, in which he stated:

You mentioned an attorney in your office would be handling Settlement. Based on past experiences please have counsel review the report and call to assure me all requirements of the seller are satisfied, the estate can convey good title and to arrange a mutually convenient Settlement date.

In our last conversation you were not sure whether the Administratrix would come in for the Closing. Since she must sign the deed, if counsel will let me

know I will have the deed prepared and forward it now so she can execute it prior to and have it presented at Settlement. We are ready to complete the purchase as soon as the above occurs. I will wait to hear from counsel.

Respondent's Exhibit 6.

¶ 14 During the month of September 1999, Kim Gaines conversed by telephone with appellee and with Rosenthal, during which appellee and Rosenthal told Gaines that appellant had to "do something" with orphans' court before settlement could occur. N.T., Trial, 11/17/03 at 174. They were apparently referring to the petitioning of orphan's court and entry of security as SearchTec indicated in its title report that it required.

¶ 15 On September 29, 1999, Rosenthal wrote another letter to Gaines in which he stated:

You called me Tuesday, September 28th, to attempt to schedule settlement by September 30th. I could not nor could the Title Company schedule a settlement at the end of a month upon two days' notice. If you are concerned my client has changed his mind about the purchase, he has not. The Agreement permits 'a reasonable time thereafter' for the 'Estimated Settlement Date' to be held. I said I could schedule Settlement next week. You were to check the attorney's schedule who will be handling Settlement for the Administratrix and get back to me. You thought he might be on trial.

As I explained several times I must speak to counsel before Settlement to be sure the Estate is prepared to convey good title. Since you did not know whether the Administratrix would attend settlement I need to know whether I am to present the Deed to for her execution prior to Settlement.

I am sure you agree Settlement should consist of conveying good title, presenting an executed Deed and other documents and receiving full payment for the sale. In order to ensure Settlement runs smoothly, I must talk to the counsel prior to Closing. Therefore I again ask to have counsel contact me.

Respondent's Exhibit 7.

¶ 16 On September 29, 1999, Kim Gaines told appellant that appellee and counsel were not prepared to go to settlement on September 30th. Appellant told Gaines to terminate the agreement of sale. Accordingly, on September 29th, Gaines sent Rosenthal a letter in which she stated that "due to the Buyer's breach of the Agreement of Sale," Seller demanded payment of the $6,525 deposit in accordance with Paragraph 7, "Default of Parties" of the Agreement of Sale. Respondent's Exhibit 9. She signed the letter, Kim for Bettye. She sent a substantially similar letter to appellee.

¶ 17 Rosenthal sent a letter to appellant in which he denied his client was in default under the agreement. He reiterated that he and his client had always been prepared to close as soon as they were assured the estate could convey good title. They consistently took the position that appellant had to satisfy the SearchTec's requirements, including the requirement that appellant must petition orphans' court and enter security.

¶ 18 On October 20, 1999, Rosenthal received the executed deed from SearchTec. One week later, he sent appellant a letter in which he reiterated that appellee was ready, willing, and able to proceed with settlement as soon as the estate was ready to give clear title. He then listed the items that remained unsatisfied according to SearchTec. The first of those is the requirement that she obtain an Order for security from orphans' court.

¶ 19 On October 25, 1999, appellee commenced an action against appellant. In late November 1999, appellant returned to Philadelphia from Canada. On December 1, 2001, she moved into the condominium at issue, and, as of May 2004, continued to reside there. On September 26, 2002, appellant's sister, Helen Cheeks, assigned her interest in the condominium to appellant. By deed dated November 15, 2002, recorded December 2, 2002, appellant as administratrix of the Estate of Robert Moore conveyed the condominium to herself as an individual. Further, by documents dated December 2, 2002, she granted "reverse mortgages" on the condominium to Financial Freedom Senior Funding Corporation and to the Secretary of Housing and Urban Development to secure loans she had obtained to pay off Moore's mortgage and other bills.[3]

¶ 20 The October 1999 action filed by appellee was ultimately terminated by entry of judgment of *non pros* on March 21, 2000. On April 27, 2000, appellee filed a complaint to commence a second action against appellant. That action was transferred to the orphans' court division. On April 6, 2001, appellee filed a petition for citation in the orphans' court in which he alleged appellant breached the agreement of sale by failing to satisfy two requirements which appear in the title report, namely, to petition the orphans' court for leave to file security and for leave to receive the proceeds of the proposed sale, and to enter such security as should be fixed by Decree of the orphans' court. Appellee sought specific performance of the terms of the April 16, 1999 written sales agreement as amended by the August 1999 addendum, or, in the alternative, a $456,380.73 monetary judgment against appellant. In response, appellant sought a $6,525 judgment against appellee and a declaration that the agreement was null and void.

¶ 21 After hearing testimony of appellant and Kim Gaines and weighing it against the statements in Rosenthal's letters, which were offered into evidence by appellant, the court found the statements in the letters were accurate and credible. It further found appellant's and Gaines' testimony to be inaccurate and incredible to the extent that it conflicted with Rosenthal's statements in his letters. Specifically, it rejected as incredible Gaines' testimony that she never told Rosenthal that an attorney in her law firm would be handling settlement for appellant, that in September 1999, someone at SearchTec told her title on the condominium was clear and settlement could proceed, and that in September 1999, Gaines told appellant and Rosenthal of her understanding based on statements made by someone at SearchTec.

---

**3.** Reverse mortgages have been described as a financial planning device for the elderly who are often "house rich, but cash poor." (*See* Hammond, *Reverse Mortgages: A Financial Planning Device for the Elderly* (1993) Elder L.J. 75, 76 (hereafter Hammond).) A reverse mortgage can address this dilemma by providing a means for converting home equity into cash. (*Ibid.*) In a reverse mortgage, as in a conventional mortgage, the mortgagee or lender advances money to the borrower or mortgagor. However, in a reverse mortgage the borrower is often times not obligated to repay any portion of the loan or the interest on the loan amount until the property is sold, the loan matures or the borrower dies or experiences an extended absence from the premises. (*Id.* at 86; *see also* 15 U.S.C. § 1602(bb). n2) The interest on the borrowed sums is added to the principal loan amount and the lender acquires a lien against the house in the amount of the initial principal and accumulated interest. (Hammond, *supra*, 1 Elder L.J. at p. 86.)

*Black v. Financial Freedom Senior Funding Corp.,* 92 Cal.App.4th 917, 921–922, 112 Cal. Rptr.2d 445, 460 (2001).

¶ 22 The court concluded that appellant, acting by herself and through her daughter, was culpably negligent in her dealings with appellee and Rosenthal. It held that as a result of her actions and those of Gaines, during the months of May through September 1999, appellee and Rosenthal reasonable believed:

a) that Bettye had an attorney helping her to prepare for settlement;

b) that Bettye was not in Philadelphia, but there was a possibility that she might come to Philadelphia to attend the settlement;

c) that there was no objection to or problem with the Requirement of SearchTec Abstract that Bettye must petition for Orphans' Court and enter security;

d) that Bettye was not prepared to go to settlement because she had not yet Petitioned the Orphans Court and entered security; and,

e) that there would not be any breach of the Agreement of Sale if settlement did not occur on September 30, 1999.

Trial Court Opinion, at 26 (referring to finding of fact # 88 on pages 19–20). The court found that appellee and Rosenthal rightfully relied on such beliefs in failing to go to Settlement on September 30, 1999 and that appellee would be prejudiced if appellant is permitted to deny the existence of the facts in which she led appellee and Rosenthal to believe. Accordingly, it held appellant was estopped to deny that there was no objection to or problem with the requirement of SearchTec that she must petition the orphans' court and enter security; that she was estopped to deny that she was not prepared to go to settlement on September 30, 1999 because she had not petitioned the orphans' court and entered security; that she is estopped to deny that there was no breach of the agreement of sale because settlement did not occur on September 30, 1999, and, that appellant had no right to terminate the agreement of sale, as she purported to do by her September 29, 1999 letters Gaines sent to appellee and Rosenthal. Accordingly, the court determined appellee was entitled to specific performance.

¶ 23 On appeal, appellant argues only that the trial court lacked jurisdiction because, as the current owner of the real estate, she, as an individual, is an indispensable party but was named in the law suit only as administratrix of the estate and not individually. Appellant's brief at 6.

When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the factfinder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of the discretion. *In re Estate of Rosser*, 821 A.2d 615, 618 (Pa.Super.2003), *appeal denied*, 574 Pa. 761, 831 A.2d 600, (2003), *citing In re Estate of Geniviva*, 450 Pa.Super. 54, 675 A.2d 306, 310 (1996).

¶ 24 A party is indispensable when his or her rights are so connected with the claims of the litigants that no Decree can be made without impairing those rights. *City of Philadelphia v. Commonwealth of Pennsylvania*, 575 Pa. 542, 567, 838 A.2d 566, 581 (2003). Also, a party is said to be indispensable "when he has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience." *Miller v. Benjamin Coal Company*, 425 Pa.Super. 316, 625 A.2d 66, 67–68 (1993). The absence of an indispens-

able party goes to the court's jurisdiction and prevents it from granting relief. *Centolanza v. Lehigh Valley Dairies,* 540 Pa. 398, 402–403, 658 A.2d 336, 338 (1995); *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662, 665 (Pa.Super.2000).

¶ 25 The basic inquiry in determining whether a party is indispensable concerns whether justice can be done in the absence of him or her. *City of Philadelphia, supra,* at 567, 838 A.2d at 581. We also consider the following:

1. Do absent parties have a right or interest related to the claim?
2. If so, what is the nature of that right or interest?
3. Is that right or interest essential to the merits of the issue?
4. Can justice be afforded without violating the due process rights of absent parties?

*Centolanza, supra,* at 338–339.

¶ 26 Generally, it is true that "the owner of real estate is an indispensable party to proceedings seeking to transfer title to the property to another and culminating in an Order purportedly vesting title in another." *See Nicoletti v. Allegheny County Airport Authority,* 841 A.2d 156, 163 (Pa. Commw.2004); *see also Miller, supra,* at 68 (stating that where the object of a bill is to divest a title to property, the presence of those holding or claiming such title is indispensable). Resolution of this issue under the facts of this case is not so straightforward.

¶ 27 Appellee initiated the underlying action in April 2000. Appellant deeded the condominium to herself more than two and a half years later, in December 2002. It is not disputed that at the time the action was initiated, all indispensable parties were named in the action. "Once the jurisdiction of a court attaches, it continues until the cause is finally deter-

mined." *J.H. France Refractories Co. v. Allstate Ins. Co.,* 521 Pa. 91, 96, 555 A.2d 797, 800 (1989). "[J]urisdiction once acquired is not defeated by subsequent events, even though they are of such a character as would have prevented jurisdiction from attaching in the first instance." *Get Set Organization v. Philadelphia Federation of Teachers,* 446 Pa. 174, 181, 286 A.2d 633, 636 (1971); *see also Holt's Cigar Co. v. 222 Liberty Associates,* 404 Pa.Super. 578, 591 A.2d 743 (1991) (stating that once equity jurisdiction properly attaches, it continues even though a later factual change occurs which would have defeated jurisdiction in the first place). Appellant does not dispute that the orphan's court had jurisdiction initially. *See* appellant's reply brief at 4–5 (stating that appellant "would not, and frankly could not, successfully challenge the jurisdiction of the Court over her or the disputed property given that the matter was already before the Court and arose out of the administration of an estate within its jurisdiction.") We find appellant's subsequent act of deeding the property to herself did not defeat the jurisdiction of the court.

¶ 28 Further, as the trial court noted, Moore's two surviving sisters, Helen Cheeks and appellant Betty Gaines, were his heirs-at-law and next-of-kin under intestate laws. Moore had two assets at the time of his death, a checking account and a condominium. Appellant and her sister were the two people who stood to inherit those assets. Before appellant conveyed the condominium to herself, however, appellant's sister, Helen Cheeks, assigned her interest in the condominium to appellant. So, appellant was the only person who stood to inherit the condominium. Accordingly, the interest of appellant as administrator of the estate was identical to her individual interest. *Cf. City of Phila-*

*delphia v. Commonwealth of Pennsylvania*, 575 Pa. 542, 568, 838 A.2d 566, 582 (2003) (stating that where one's official designee is a party, the participation of such designee alone may be sufficient, *because the interests of the two are identical*).

¶ 29 Also, as noted *supra*, in determining whether appellant is truly an indispensable party, we are to consider: do absent parties have a right or interest related to the claim; if so, what is the nature of that right or interest; is that right or interest essential to the merits of the issue; and can justice be afforded without violating the due process rights of absent parties. *Centolanza, supra,* at 338–339. Appellee raises the question of whether appellant as an individual truly was an "absent" party. Appellee's brief at 11–12. It is an interesting question under the facts, and one we need not resolve as we find justice in this case has been served without violating appellant's due process rights. Appellant contends that due process under both our state and federal constitutions require that appellant not be deprived of her property without notice and an opportunity to be heard. Appellant's brief at 8–9. Certainly, the reason the holder of title in property is regarded as an indispensable party is the protection of due process rights. Under the circumstances here, we find appellant's due process rights were not violated. Appellant had notice as she created the predicament herself while in the midst of litigation over the property, and she had an opportunity to be heard.

¶ 30 We further note that the facts of this case clearly indicate, as the trial court found, that the closing did not occur by September 30, 1999 due to appellant's own conduct. Appellee at all times indicated he was ready, willing and able to proceed with closing. Appellant is treating the settlement date as a condition, the nonoccurrence of which would excuse her performance. Certainly, a party to a contract cannot cause the non-occurrence of a condition and then use the non-occurrence of that condition to excuse her failure to perform. After she did just that, appellant then conveyed the property to herself in November 2002. Appellant concedes that appellee was not made aware of this fact until "almost two weeks before trial." Appellant's reply brief at 5. Trial in this case took place in November 2003, a year after appellant made the conveyance. We believe that, under the specific facts of this case, "equity and good conscience" do not require appellant to be named individually and we find that justice was done without appellee specifically having named appellant individually.

¶ 31 Appellant only raised the issue of jurisdiction and so we need not conduct a further review of the orphans' court conclusions.

¶ 32 Decree affirmed.[4]

---

4. Appellant's Motion to Suppress Appellee's Supplemental Reproduced Record is denied as moot in that the pages referenced within said motion were not considered by the panel in its consideration of this case.