J-A21026-21

2022 PA Super 39

| BANK OF AMERICA, N.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANDRE FREEMAN SCOTT, KNOWN | : | No. 2167 EDA 2020 |
| HEIR OF BESSIE EMORY A/K/A | : | |
| BESSIE LEE EMORY; ESTATE OF | : | |
| BESSIE EMORY A/K/A BESSIE LEE | : | |
| EMORY; EVELYN SCOTT-DAVIS, | : | |
| PERSONAL REPRESENTATIVE OF THE | : | |
| ESTATE OF BESSIE EMORY A/K/A | : | |
| BESSIE LEE EMORY; UNKNOWN | : | |
| HEIRS, SUCCESSORS, ASSIGNS AND | : | |
| ALL PERSONS, FIRMS, OR | : | |
| ASSOCIATIONS CLAIMING RIGHT, | : | |
| TITLE OR INTEREST FROM OR | : | |
| UNDER BESSIE EMORY A/K/A BESSIE | : | |
| LEE EMORY | : | |

Appeal from the Judgment Entered October 13, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): No. 170403149

BEFORE: KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.*

OPINION BY NICHOLS, J.: **FILED MARCH 03, 2022**

Appellant Bank of America, N.A. appeals from the judgment entered in favor of the Estate of Bessie Emory A/K/A Bessie Lee Emory (the Estate), Andre Freeman Scott, and Evelyn Scott-Davis, Personal Representative of the Estate (collectively, Appellees), following a non-jury trial in this mortgage

---

* Former Justice specially assigned to the Superior Court.

foreclosure action. The trial court found in favor of Appellees because they exercised an option under a reverse mortgage to avoid foreclosure and Appellant rejected Appellees' proposal. Appellant claims the trial court erred by concluding that said option applied in this case, finding in favor of Appellees, and admitting certain evidence. We affirm.

The decedent Bessie Emory (Mortgagor) took out a Federal Housing Authority-insured (FHA) reverse mortgage[1] on the real property located at 4540 North Camac Street in Philadelphia (Property) from Champion Mortgage Company (Champion), Appellant's predecessor in interest. R.R. at 79a-91a (the reverse mortgage), 93a-108a (assignment history of the reverse mortgage).[2]

---

[1] This Court has explained:

> Reverse mortgages have been described as a financial planning device for [those] who are [] house rich, but cash poor. . . . In a reverse mortgage, as in a conventional mortgage, the mortgagee or lender advances money to the borrower or mortgagor. However, in a reverse mortgage the borrower is often times not obligated to repay any portion of the loan or the interest on the loan amount until the property is sold, the loan matures or the borrower dies or experiences an extended absence from the premises. The interest on the borrowed sums is added to the principal loan amount and the lender acquires a lien against the house in the amount of the initial principal and accumulated interest.

*In re Estate of Moore*, 871 A.2d 196, 201 n.3 (Pa. Super. 2005) (citations and quotations marks omitted).

[2] We may refer to the reproduced record for the parties' convenience.

The reverse mortgage set forth several grounds for default under which it would be come due and payable; one of these was the death of the Mortgagor. *Id.* at 82a. Also, the reverse mortgage set forth a number of alternatives to foreclosure which could be exercised under certain circumstances, including selling the Property for 95% of its appraised value and applying the proceeds of that sale against the balance of the mortgage. *Id.*

The trial court summarized the factual history as follows:

[Appellees] established that upon the death of Bessie Emory, Champion Mortgage, the mortgage servicer and [Appellant's] predecessor in interest, sent a letter to Evelyn Scott Davis, the appointed Executrix of the Estate of Bessie Emory. In that letter, dated November 7, 2016 ("the Letter"), Champion Mortgage made the following statements.

"The reverse mortgage is technically in default due to the death of [mortgagor]."

\* \* \*

"This default must be resolved by any of the following methods:

\* \* \*

B. The mortgage will be released and no deficiency judgment filed if the property sells for the lesser of the debt, including shared appreciation, or 95% of the appraised value with the proceeds made payable to Champion Mortgage, even if the debt is greater than the appraised value.

> Please contact us for more information if you are interested in this option and believe that the property value is less than the outstanding principal balance.

\* \* \*

The Mortgagor or the Mortgagor's estate may request[] an appraisal at his or her own expense if an estimate of the property's current value is desired. If none of the actions above are taken in thirty (30) days, Foreclosure will be initiated by the Servicer within three (3) months, but not less than one (1) month.

Whichever option that you choose, HUD[3] guidelines require that we obtain a full appraisal on the property. You may be receiving a phone call from our appraisal vendor in the coming weeks to attempt to schedule an appointment to visit the property.

Notably, this portion of the Letter parrots the language in Paragraph 9(d) of the mortgage. This language is prescribed by and mandated for inclusion in reverse mortgages by the Department of Housing and Urban Development, 24 CFR § 206.125.

Upon receiving the Letter, Ms. Davis sought and obtained an appraisal. The appraisal Ms. Davis obtained is dated November 16, 2016. According to the appraisal obtained by Ms. Davis, the value of the property was $28,000. Ms. Davis credibly testified that the Estate . . . was ready willing and able to pay [Champion] $26,600 for the property, which was 95% of the appraised value of the property per the terms of Paragraph B of the November 7, 2016 letter.

Ms. Davis testified that after she obtained the appraisal, she attempted to make payoff arrangements with Champion Mortgage. Shortly after contacting Champion Mortgage, Ms. Davis was advised that the loan had been sold to [Appellant].

After Ms. Davis learned that the loan had been sold to [Appellant], she was advised via telephone by [Appellant] and/or its mortgage servicer, Reverse Mortgage Solutions, that she had to obtain another appraisal, which she did. The second appraisal obtained by Ms. Davis valued the property at $30,000. Ms. Davis sent this appraisal to [Appellant]. [Appellant] obtained its own appraisal of the property, which also valued the property at $30,000. Ms. Davis offered to pay Bank of America $28,000, which is 95% of the $30,000 appraised value. According to Ms. Davis, [Appellant] never accepted [either $26,000 or] $28,000 and instead

_____

[3] The United States Department of House and Urban Development.

- 4 -

demanded payment of $35,000 to resolve the default. There is no evidence that [Appellant] had obtained its own appraisal to support the $35,000 payoff quote. [Appellant's] demand for $35,000 was the last Ms. Davis heard from [Appellant] before [Appellant] took steps to initiate this foreclosure action.

Trial Ct. Op., 9/23/20, at 2-4 (citations and footnote omitted, formatting altered).

Appellant filed a complaint in foreclosure on April 21, 2017. Appellees filed an answer and new matter on March 16, 2018, asserting, among other things, that Appellant refused to accept payment equal to 95% of the appraised value of the Property to prevent a foreclosure and this violated applicable federal regulations. R.R. at 61a-68a.

On November 25, 2019, Appellant filed a motion *in limine* seeking to preclude evidence and testimony regarding Champion's and Appellant's loss mitigation efforts. R.R. at 14a. The trial court denied that motion at the outset of the non-jury trial. N.T. Trial, 1/21/20, at 4, R.R. at 258a.

By way of further background, the trial court explained:

A non-jury trial was held before th[e trial c]ourt on January 21, 2020. The [c]ourt heard witness testimony and accepted documentary evidence. Following the presentation of all of the evidence and argument by both sides, the [c]ourt found in favor of [Appellees]. The [c]ourt determined that [Appellant] had failed to sustain its burden that it was entitled to foreclose on the property. As the fact finder, th[e trial c]ourt made witness credibility determinations and weighed the importance to give to the admitted evidence.

\* \* \*

At trial, counsel for [Appellant] extensively cross[-]examined Ms. Davis and Andre Freeman Scott, who is Bessie Emory's heir, on the Estate's supposed (in)ability to pay the sums necessary to

- 5 -

resolve the default. The [c]ourt concluded that [Appellees] testified credibly that they were financially in a position to resolve the default, but that [Appellant] never gave the Estate the opportunity to do so.

The [c]ourt concluded that the [Appellant's] "ability to pay" questions at trial were an attempt by [Appellant] to *post hoc* justify why [Appellant] short circuited its own process that it (through its predecessor Champion Mortgage) set out for [Appellees] to resolve the default. [Appellant] offered no testimony or documents showing that [Appellant] ever meaningfully participated in the process set forth in Paragraph B of the Letter.

Instead, [Appellees'] testimony at trial — and [Appellant's] own Complaint allegations — reflects that after [Appellant] had purchased the loan from Champion Mortgage, it promptly sent [Appellees] a foreclosure letter on March 7, 2017 and initiated this foreclosure action on April 21, 2017.

The Trial Worksheet prepared by the [trial c]ourt finding in favor of [Appellees] states that [Appellant] had failed to prove a condition precedent to Paragraph 9(d) of the mortgage.

Trial Ct. Op. at 4 (citations omitted).

Appellant filed a timely post-trial motion, which requested judgment notwithstanding the verdict (JNOV). In its post-trial motion, Appellant contended that the trial court erred in holding that Paragraph 9(d) of the mortgage was applicable to the default in this matter, *i.e.*, the death of the mortgagor. R.R. at 282a-84a. Appellant alternatively claimed that even if Paragraph 9(d) was applicable to the default resulting from the death of the mortgagor, Appellant had established that it and Champion had complied with requirements of that paragraph by providing Appellees with sufficient notice prior to filing the instant foreclosure action. *Id.* at 284a-85a.

On August 18, 2020, the trial court held a virtual oral argument on Appellant's post-trial motion. The trial court issued an opinion and order denying the post-trial motion on September 23, 2020.[4] Judgment was entered on October 13, 2020. Appellant then filed a timely notice of appeal.

The trial court did not order Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b). The trial court filed its September 23, 2020 opinion denying Appellant's post-trial motion in lieu of a separate Rule 1925(a) opinion.

Appellant raises the following issues for our review, which we reorder as follows:

1. Whether the trial court erred and abused its discretion in allowing testimony regarding loss mitigation by denying [Appellant's] motion *in limine* and overruling [Appellant's] objection where the loss mitigation testimony had no bearing on the execution of the loan documents, default, and amount due under mortgage.

2. Whether the trial court erred as matter of law and abused its discretion by entering a verdict in favor of [Appellees] based upon Paragraph 9(d) of the mortgage where Paragraph 9(d)

---

[4] We note that Appellant did not request a directed verdict orally or in writing at the close of evidence at trial. "Ordinarily, to preserve the right to request judgment notwithstanding the verdict (JNOV), a party must first request a binding charge to the jury or move for a directed verdict or compulsory non-suit. A motion for a directed verdict is appropriate even in the non-jury trial context." ***Wag-Myr Woodlands Homeowners Ass'n by Morgan v. Guiswite***, 197 A.3d 1243, 1250 n.10 (Pa. Super. 2018) (citation omitted). Where the trial court did not find waiver of the appellant's post-trial motion for JNOV and addressed the issue, we have declined to find waiver. ***See id.*** Here, the trial court did not find waiver. Therefore, we proceed with our discussion.

was not applicable as the parties stipulated to default under 9(a)(i).

3. Whether the trial court erred as a matter of law and abused its discretion when denying [Appellant's] post-trial motion for judgment as a matter of law and alternative request for a new trial.

Appellant's Brief at 4 (formatting altered).

## Motion *in Limine*

Appellant argues that the trial court erred in denying Appellant's motion *in limine* to preclude Appellees from introducing evidence regarding loss mitigation and payoff. Appellant's Brief at 34-40. However, before we reach the merits of this issue, we must determine if Appellant has preserved it for appeal. *See Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007) (stating that this Court "may *sua sponte* determine whether issues have been properly preserved for appeal" (citation and formatting altered)).

Rule of Civil Procedure 227.1 provides:

(a) After trial and upon the written Motion for Post-Trial Relief filed by any party, the court may

    (1) order a new trial as to all or any of the issues; or

    (2) direct the entry of judgment in favor of any party; or

    (3) remove a nonsuit; or

    (4) affirm, modify or change the decision; or

    (5) enter any other appropriate order.

(b) Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,

    (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact

or conclusions of law, offer of proof or other appropriate method at trial; and

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

(c) Post-trial motions shall be filed within ten days after

(1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or

(2) notice of nonsuit or the filing of the decision in the case of a trial without jury.

If a party has filed a timely post-trial motion, any other party may file a post-trial motion within ten days after the filing of the first post-trial motion.

Pa.R.C.P. 227.1.

Our Supreme Court has explained that "[u]nder Rule 227.1, a party must file post-trial motions at the conclusion of a trial in any type of action in order to preserve claims that the party wishes to raise on appeal." *Chalkey v. Roush*, 805 A.2d 491, 496 (Pa. 2002) (citation omitted and formatting altered). "Grounds not specified by a party in post-trial motions pursuant to Rule 227.1 shall be deemed waived on appellate review." *Id.* at 494 (citing, *inter alia*, Pa.R.C.P. 227.1(b)(2)).

Here, Appellant filed a motion *in limine* on November 25, 2019, seeking to preclude evidence and testimony regarding loss mitigation. *See* R.R. at 14a. The trial court denied that motion at the outset of the trial. *See* N.T. Trial at 4, R.R. at 258a. Appellant renewed its objection to the admission of loss mitigation evidence during trial. *See id.* at 30, R.R. at 265a. However,

Appellant did not raise the denial of its motion *in limine* in its post-trial motion. **See** R.R. at 282a-85a.  Therefore, we conclude Appellant has waived this issue for appellate review.  **See Chalkey**, 805 A.2d at 494.

## The Trial Court's Verdict

Appellant's next two issues are related, and therefore, we summarize them together.  Appellant claims that it proved all of the elements necessary to establish that it was entitled to a judgment in foreclosure and the trial court erred by concluding that Appellant had failed to meet a condition precedent in the reverse mortgage.  Appellant's Brief at 16-20, 25-26.  Specifically, Appellant asserts that notwithstanding Champion's November 7, 2016 letter to Appellees, which "parrot[ed]" the language of Paragraph 9(d), "[Paragraph] 9(d) is only triggered when mortgage is in default under [Paragraphs] 9(a)(ii) and (b)."  **Id.** at 22-23; **see also id.** at 27.  Appellant contends that the total amount owed under the reverse mortgage was due because of Mortgagor's death pursuant to Paragraph 9(a)(i).  **Id.** at 20-22.  For these reasons, Appellant further argues that the trial court erred in concluding that Paragraph 9(d) was applicable to the facts of this case.  **Id.** at 20, 22-24, 27; **see also id.** at 25 (arguing that under **Chandler v. Wells Fargo Bank**, 2014 WL 31315 (N.D. Cal. Jan. 3, 2014), when a reverse mortgage is due and payable because of the mortgagor's death, the mortgagor's heirs are not entitled to notice of and the right to exercise the option to purchase the mortgaged property for 95% of its appraised value).

Appellant alternatively argues that even if it was required under Paragraph 9(d) to give notice to Mortgagor's heirs prior to commencing foreclosure, Champion's November 7, 2016 letter was adequate notice because Appellant did not commence this action until more than thirty days after Champion sent that letter. *Id.* at 23-24, 27.

Appellant further contends that the trial court's conclusion "essentially turned FHA guidelines into an affirmative step or element required to be proven by [Appellant], which is contrary to the law." *Id.* at 24. Appellant asserts that this Court has previously held that federal regulations and guidelines do not have the force of law and may not be asserted as an affirmative defense in a Pennsylvania foreclosure action. *Id.* at 24-25 (citing ***Fleet Real Estate Funding Corp. v. Smith***, 530 A.2d 919, 921-24 (Pa. Super. 1987) (***Smith***)). Appellant claims that under ***Smith***, an equitable defense arises "only where the mortgagee fails to service a loan within reasonable expectations of good faith and fair dealing." *Id.* at 25. Appellant concludes that the "trial court improperly imposed an affirmative condition on [Appellant] in its foreclosure action based upon FHA guidelines and regulations" and the verdict in favor of Appellees should be reversed. *Id.* at 26-27.

For these same reasons, Appellant also argues that the trial court erred by denying Appellant's post-trial motion for JNOV or a new trial. *Id.* at 28-33.

Appellees respond that the mortgagee's failure to follow applicable HUD guidelines is an affirmative defense to a mortgage foreclosure action. Appellees' Brief at 22-27 (citing, *inter alia*, **Smith**, 530 A.2d at 923). Specifically, Appellees argue that the reverse mortgage in the instant matter was subject to HUD regulations governing home equity conversion mortgages, another term for reverse mortgages. *Id.* at 11-12. Appellees assert that under 24 C.F.R. § 206.125, the heirs of a deceased mortgagor have the opportunity to pay off the loan for 95% of the appraised value of the mortgaged property. *Id.* at 12-16. Appellees contend that Appellant was required to comply with the HUD regulations and accept Appellees' offer to "pay off the loan for 95% of the appraised value of the property." *Id.* at 11-16; *see also id.* at 24-26 (citing, *inter alia*, HUD Handbook 4330.1 §§ 13-33, 13-34 for the proposition that the mortgagor's estate and heirs are entitled to notice of the 95% payoff option, and that if the mortgagor's estate makes such a payment at any time prior to foreclosure sale, the mortgagee "must accept it and discontinue the foreclosure proceedings"). Appellees claim that the trial court found that this 95% payoff procedure is set forth in both the HUD regulations and Paragraph 9(d) of the reverse mortgage. *Id.* at 16. Appellees argue that there was sufficient evidence to support the trial court's finding that Appellees accepted Champion's offer to pay off the reverse mortgage for 95% of the appraised value of the Property to resolve the default, but that Champion and Appellant failed to follow through with

Appellees. *Id.* at 26-28. Appellees further argue that the trial court properly denied Appellant's post-trial motion. *Id.* at 29-34.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Bank of N.Y. Mellon v. Bach*, 159 A.3d 16, 19 (Pa. Super. 2017) (*Bach*) (citation omitted).

When reviewing an order resolving a post-trial motion for JNOV, our standard of review is as follows:

> A judgment notwithstanding the verdict can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our

judgment for that of the finder of fact. If any basis exists upon which the [trial] court could have properly made its award, then we must affirm the trial court's denial of the motion for judgment notwithstanding the verdict. A judgment notwithstanding the verdict should be entered only in a clear case.

*Karden Constr. Servs., Inc. v. D'Amico*, 219 A.3d 619, 627 (Pa. Super. 2019) (*Karden*) (citation omitted), *appeal denied*, 229 A.3d 234 (Pa. 2020).

Our Supreme Court has explained that a judgment notwithstanding the verdict

should only be entered in a clear case with any doubts resolved in favor of the verdict winner. An appellate court "stands on a different plane" than a trial court, and it is the trial court that has the benefit of an "on-the-scene evaluation of the evidence." As such, while the appellate court may disagree with a verdict, it may not grant a motion for JNOV simply because it would have come to a different conclusion. Indeed, the verdict must stand unless there is no legal basis for it.

*Menkowitz v. Peerless Publications, Inc.*, 211 A.3d 797, 804 (Pa. 2019) (citations omitted).

This Court has explained:

A mortgage is a formal document of specific character and it should be strictly construed. A mortgage agreement, as a contract, must be interpreted as a whole. One part of a contract cannot be interpreted so as to annul another part of the contract. A contract must be construed, if at all possible, to give effect to all of its terms. Additionally, a contract's terms, if ambiguous, are construed against the drafter.

*Second Fed. Sav. & Loan Ass'n v. Brennan*, 598 A.2d 997, 999 (Pa. Super. 1991) (*Brennan*) (citations omitted). Further, it is well settled that "[i]t is not the province of the court to alter a contract by construction or to make a

- 14 -

new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, without regard to its wisdom or folly." ***SBA Towers II LLC v. Wireless Holdings, LLC***, 231 A.3d 901, 908 (Pa. Super. 2020) (*en banc*) (citation omitted), *appeal denied*, 240 A.3d 105 (Pa. 2020).

Here, the trial court stated:

During the oral argument on its post-trial motion, counsel for [Appellant] argued that Paragraph 9(d) of the mortgage is inapplicable because the mortgage was due and payable under Paragraph 9(a)(i). [Appellant] made this same claim at trial. The record, however, does not support this contention.

While counsel for [Appellant] made a passing reference to Paragraph 9(a) during argument at trial, the testimony [Appellant] elicited from its own, sole witness only addressed the payoff figure [Appellant] contended is owed by [Appellees]. [Appellant] did not elicit any testimony from its witness regarding the reasons for foreclosure, including any facts that would support foreclosure under Paragraph 9(a)(i), as [Appellant] now contends. The Letter itself — the first written communication from [Appellant] to [Appellees] following the death of Bessie Emory — does not reference Paragraph 9(a)(i) or quote language from that paragraph. The record simply does not support [Appellant's] contention. Furthermore, [Appellant's] questions at trial on the Estate's (in)ability to pay the amount equal to 95% of the appraised value undermines [Appellant's] argument in its post-trial motion that "Paragraph 9(d) does not apply to the default in this case (*i.e.* death of [mortgagor])."

\*    \*    \*

A reverse mortgage is a contract. The rights and obligations of the parties are governed by the mortgage documents. In this case, [Appellees] presented evidence at trial that [Appellant], upon the death of Bessie Emory, sent [Appellees] an offer to resolve the default pursuant to Paragraph 9(d) of the mortgage. [Appellees] timely accepted the "offer" set forth in Paragraph 9(d) of the mortgage (the Letter repeats Paragraph 9(d) verbatim). [Appellant] failed to adhere to its obligations because it instituted

this foreclosure action instead of allowing [Appellees] to resolve the default.

Trial Ct. Op. at 5, 7 (citations omitted and formatting altered).

The reverse mortgage states in relevant part:

**9. Grounds for Acceleration of Debt.**

**(a) Due and Payable**.  [Mortgagee] may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A [Mortgagor] dies and the Property is not the principal residence of at least one surviving [Mortgagor]; or

(ii) All of a [Mortgagor's] title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise and no other [Mortgagor] retains (a) title to the Property in fee simple, (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest [Mortgagor], or (c) a life estate in the Property (or a beneficial interest in a trust with such an interest in the Property).

**(b) Due and Payable with Secretary Approval**. [Mortgagee] may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a [Mortgagor] for reasons other than death and the Property is not the principal residence of at least one other [Mortgagor]; or

(ii) For a period of longer than twelve (12) consecutive months, a [Mortgagor] fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other [Mortgagor]; or

(iii) An obligation of the [Mortgagor] under this Security Instrument is not performed.

\* \* \*

**(d) Notice to Secretary and [Mortgagor]**. [Mortgagee] shall notify the Secretary and [Mortgagor] whenever the loan becomes due and payable under this Paragraph 9(a)(ii) and (b). [Mortgagee] shall not have the right to foreclosure until [Mortgagor] has had thirty (30) days notice to either:

> (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

> (ii) Pay the balance in full; or

> (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

> (iv) Provide the [Mortgagee] with a deed in lieu of foreclosure.

R.R. at 82a.

Here, Paragraph 9(a)(i) provides that the mortgagee may require immediate payment in full of all sums secured by reverse mortgage if the mortgagor dies and the Property is not the principal residence of at least one surviving mortgagor. *See id.* Mrs. Emory was the sole mortgagor on the reverse mortgage. *See id.* At trial, the parties stipulated that the mortgage was in default due to the death of Mortgagor. *See* N.T. Trial at 11, R.R. at 260a.

It is undisputed that Appellant, and its predecessor in interest, provided Appellees notice pursuant to Paragraph 9(d) more than thirty days before Appellant initiated this foreclosure action. *See* Trial Ct. Op. at 2-4. The trial court also concluded that under Paragraph 9(d) of the mortgage, Appellees could prevent foreclosure by paying Appellant an amount equal to 95% of the

appraised value of the Property. ***See id.*** at 5, 7. The trial court further found that Appellees offered to pay Appellant an amount equal to 95% of the appraised value of the Property to prevent a foreclosure, which Appellant rejected and demanded a greater amount. ***See id.*** at 4.

However, we note that the mortgage does not contain any provision requiring the mortgagee to comply with the mortgagor's invocation of any of the foreclosure alternatives set forth in Paragraph 9(d) after the mortgagee has provided the thirty days' notice required under that paragraph. ***See*** R.R. at 79a-87a. Nor do the terms of the mortgage establish a penalty for the mortgagee or remedy for the mortgagor if the mortgagee refuses the mortgagor's invocation of one of Paragraph 9(d)'s foreclosure alternatives, and the mortgagee instead proceeds to foreclosure after the thirty-day period has passed. ***See id.*** Therefore, we are constrained to conclude that the trial court erred in finding that Paragraph 9(d) is a condition precedent to foreclosure insofar as the mortgagee must accept a mortgagor's offer to sell the property for 95% of its appraised value after the thirty-day period set forth in Paragraph 9(d) had expired. ***See SBA Towers II LLC***, 231 A.3d at 908.

As we may affirm on any legal basis, we shall also examine Appellees' claim that they established an equitable defense based on Appellant's failure to follow the applicable federal regulations. ***See Menkowitz***, 211 A.3d at 804; ***Karden***, 219 A.3d at 627.

This Court has stated that "federal law does not mandate that a mortgagee comply with the regulations and [HUD] Handbook provisions prior to foreclosing on an FHA-insured mortgage[,]" but it has held that "a mortgagor of an FHA-insured mortgage may raise as an equitable defense to foreclosure, the mortgagee's deviation from compliance with the forbearance provisions of the HUD Handbook and regulations." ***Smith***, 530 A.2d at 922-23; ***accord Bank of New York Mellon for Certificate Holders of CWALT, Inc., Alternative Loan Tr. 2007-HY6 Mortgage Pass-through Certificates Series 2007-HY6 v. Brooks***, 169 A.3d 667, 672 n.4 (Pa. Super. 2017) (***Brooks***) (noting that "a mortgagor's failure to comply with federal regulations constitutes an affirmative defense to a foreclosure action" (citation omitted)).

The applicable HUD regulations concerning reverse mortgages are codified at 24 C.F.R. §§ 206.1-206.308. At the time of Mortgagor's death, Section 206.27 stated "[t]he mortgage shall state that the mortgage balance will be due and payable in full if a mortgagor dies and the property is not the principal residence of at least one surviving mortgagor. . . ." 24 C.F.R. § 206.27(c)(1) (subsequently amended eff. Sept. 17, 2017).

Further, the regulations provided:

(a) Initial action by the mortgagee.

(1) The mortgagee shall notify the Secretary whenever the mortgage is due and payable **under the conditions stated in § 206.27(c)(1)**, or one of the conditions stated in § 206.27(c)(2) has occurred.

(2) After notifying the Secretary, and receiving approval of the Secretary when needed, the mortgagee shall notify the mortgagor that the mortgage is due and payable. The mortgagee shall require the mortgagor to (i) pay the mortgage balance, including any accrued interest and MIP, in full; (ii) **sell the property for at least 95% of the appraised value** as determined under § 206.125(b), with the net proceeds of the sale to be applied towards the mortgage balance; or (iii) provide the mortgagee with a deed in lieu of foreclosure. The mortgagor shall have 30 days in which to comply with the preceding sentence, or correct the matter which resulted in the mortgage coming due and payable, before a foreclosure proceeding is begun.

24 C.F.R. § 206.125(a)(1)-(2) (subsequently amended eff. Jan. 19, 2017) (emphases added). For the purposes of these regulations, the term "mortgagor" includes both a mortgagor's estate and personal representative. 24 C.F.R. § 206.123(b) (subsequently amended eff. Sept. 18, 2017).

Likewise, the HUD handbook titled "Administration of Insured Home Mortgages" (HUD Handbook 4330.1)[5] provides that for a due and payable mortgage, the mortgagee must provide the mortgagor or the mortgagor's estate with notice that the mortgagee will foreclose unless the mortgagor pays the debt in full, sells the property for either 95% of the appraised value or the debt, whichever is less, or deeds the property to the mortgagee. HUD Handbook 4330.1 at § 13-33. The Handbook further provides:

If at any time prior to the foreclosure sale, the mortgagor or the mortgagor's estate sells the property . . . for 95% of the current

---

[5] **See** U.S. Department of Housing and Urban Development, *Housing Handbook 4330.1*, https://www.hud.gov/program_offices/administration/hudclips/handbooks/hsgh/4330.1 (last visited Dec. 16, 2021).

appraised value . . . the mortgagee shall discontinue the foreclosure proceedings and accept the payoff.

*Id.* at § 13-34(c).

The trial court did not discuss whether the applicable regulations and HUD Handbook permitted Appellees to avoid foreclosure under the same conditions as Paragraph 9(d) of the mortgage.

Here, Appellees raised Appellant's failure to comply with relevant federal regulations governing reverse mortgages in their New Matter. *See* R.R. at 61a-68a. Appellant contends that under *Smith*, an equitable defense arises "only where the mortgagee fails to service a loan within reasonable expectations of good faith and fair dealing." Appellant's Brief at 25. We disagree. The *Smith* Court concluded that a mortgagor may assert as an affirmative defense the mortgagee's "deviation from compliance with the forbearance provisions of the HUD Handbook and regulations." *Smith*, 530 A.2d at 923; *accord Brooks*, 169 A.3d at 672 n.4.[6]

According to 24 C.F.R. § 206.125(a)(1), the mortgage becomes due and payable when any of the conditions set forth in Section 206.27(c)(1) occurs. *See* 24 C.F.R. § 206.125(a)(1). One of the conditions set forth in Section 206.27(c)(1) is the mortgagor has died and the property is not the principal

---

[6] To the extent that Appellant relies on *Chandler*, a decision of the United States District Court for the Northern District of California, for the proposition that these regulations are not applicable to this foreclosure action, we disagree. "Federal district court decisions offer this Court persuasive, but not binding, authority." *Nicholas v. Hofmann*, 158 A.3d 675, 690 n.21 (Pa. Super. 2017) (citation omitted). Therefore, *Chandler* is not binding on this Court. *See id.*

residence of at least one surviving mortgagor. *See id.* § 206.27(c)(1). Therefore, we conclude Appellees could exercise options to avoid foreclosure set forth in Section 206.125(a)(2) following the death of Mrs. Emory, the sole mortgagor. *See id.* § 206.125(a)(1)-(2); *accord* HUD Handbook 4330.1 at § 13-33. Although Section 206.125(a)(2) states that the mortgagor has thirty days to exercise any of the foreclosure avoidance options, the HUD Handbook provides that the mortgagee must accept a payoff in the amount of 95% of the appraised value of the property at any time prior to the foreclosure sale. *Compare* 24 C.F.R. § 206.125(a)(1)-(2), *with* HUD Handbook 4330.1 at § 13-34(c).

At trial, both Davis and Scott testified that they had informed Appellant and Appellant's predecessor-in-interest that they were exercising the option to sell the Property for 95% of its appraised value to avoid foreclosure, but Appellant refused to accept this amount, and instead demanded a greater amount to avoid foreclosure. *See* Trial Ct. Op. at 2-4; *see also* N.T. Trial at 39-41, 52-54, R.R. at 267a-68a, 270a-71a. Viewing the evidence in the light most favorable to Appellees as the verdict winner, we conclude that Appellees established their affirmative defense that Appellant failed to comply with 24 C.F.R. § 206.125(a)(2) and HUD Handbook 4330.1. *See Smith*, 530 A.2d at 923; *accord Brooks*, 169 A.3d at 672 n.4. As we may affirm on any basis, and because the verdict must stand unless there is no legal basis for it, we

affirm the trial court's denial of Appellant's motion for JNOV.[7] **See Menkowitz**, 211 A.3d at 804; **Karden**, 219 A.3d at 627. For these reasons, we affirm the trial court's judgment in favor of Appellees.

Judgment affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *3/3/2022*

---

[7] Appellant also argued that the trial court erred in denying its request for a new trial. Our review of the record indicates Appellant did not request a new trial in its post-trial motion. **See** R.R. at 285a. Therefore, any claim that Appellant is entitled to a new trial is waived. **See** Pa.R.C.P. 227.1(b)(2); **cf. Hall v. Owens Corning Fiberglass Corp.**, 779 A.2d 1167, 1169 (Pa. Super. 2001) (holding that the appellant waived its claim that it was entitled to JNOV on appeal where it only requested a new trial in its post-trial motion).