J-A30020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM DUFFIELD, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF ARGOVIAN TECHNOLOGIES, LLC | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| LEGEND SPINE, LLC, ARGOVIAN TECHNOLOGIES, LLC, DR. CHRISTOPHER WAGENER, STEVEN MARINELLI, EDWARD KARPOWICZ, AND MICHAEL BLACK | : : : : : : : : : | No. 3023 EDA 2024 |
| APPEAL OF: DR. CHRISTOPHER WAGENER | : : | |

Appeal from the Judgment Entered October 22, 2024
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2019-05685

| | | |
|---|---|---|
| WILLIAM DUFFIELD | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| LEGEND SPINE, LLC, ARGOVIAN TECHNOLOGIES, LLC, STEVEN MARINELLI, EDWARD KARPOWICZ, MICHAEL BLACK, CHRISTOPHER WAGENER | : : : : : : : | No. 3169 EDA 2024 |
| APPEAL OF: LEGEND SPINE, LLC, ARGOVIAN TECHNOLOGIES, LLC, STEVEN MARINELLI, EDWARD KARPOWICZ, AND MICHAEL BLACK | : : : : | |

Appeal from the Judgment Entered October 22, 2024
In the Court of Common Pleas of Bucks County

Civil Division at No(s):  2019-05685

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED MARCH 11, 2026**

Legend Spine, LLC, Argovian Technologies, LLC, and Dr. Christopher Wagener, Steven Marinelli, Edward Karpowicz, and Michael Black (collectively, "Appellants") appeal from the judgment entered in the Court of Common Pleas of Bucks County in favor of William Duffield. Appellants argue that the trial court erred because the Legend Spine operating agreement permitted expelling a member without cause, they did not breach their fiduciary duty to Duffield, and the trial court erred in its damage's calculation and awarding attorney's fees. After careful review, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

We glean the following facts from the parties' undisputed facts and the trial court's findings of fact. In 2015, Duffield approached friends in the medical device field with his idea for two companies (1) a mechanical testing company, Argovian; and (2) a medical device manufacturing spinal implant company, Legend Spine. Argovian was formed in March of 2015 with Duffield, Marinelli, Karpowicz, and Black as the founding investors, each with 25% ownership interest.[1] Duffield and Karpowicz both made an initial capital contribution of $30,000 each. Marinelli made an initial capital contribution of

_____

[1] Wagener was not a member of Argovian.

- 2 -

$10,000 and promised to pay an additional $20,000 in the future; and Black promised to pay the entire $30,000 in the future. Duffield and his wife, Gwen Duffield, later provided a $55,000 loan to Argovian.

On August 22, 2017, Duffield, Marinelli, Wagener, and Karpowicz entered into an operating agreement for Legend Spine. Each member received 19.3% of Class A shares, or 192 Class A units. The members held the following offices: Marinelli, President and Chief Executive Officer; Wagener, Chief Medical Officer; Duffield, Chief Operating Officer; and Karpowicz, Executive Vice President of Business Development.

Tensions arose between Duffield and the other Legend Spine members, apparently related to Duffield advocating for his wife Gwen. Gwen was performing financial services for both Argovian and Legend Spine but was only being paid for her services to Argovian. Duffield requested that Gwen be given "sweat equity" (*i.e.*, Class B or Class C units) for her services to Legend Spine. Gwen did not receive any compensation or equity but was added to the operating agreement as Chief Financial Officer. Later, in August 2018, Duffield requested that the Argovian operating agreement be amended to allow his Argovian membership interest to be distributed directly to Gwen in the event of his death.

On August 16, 2018, Wagener, Karpowicz, and Marinelli had a meeting where they voted to terminate Gwen as Legend Spine CFO. On August 22,

2018, they voted to expel Duffield from Legend Spine without cause.[2] Duffield was not notified that the other members were voting on his expulsion and he did not attend the meeting. After the vote, Legend Spine's counsel notified Duffield via email that, pursuant to Section 14.11(c) of the operating agreement, Duffield's membership units reverted to the remaining Class A members; Duffield's position as COO was terminated; and Duffield would not be compensated for his membership interest. It included an offer "as a gesture of good will" to increase his ownership interest in Argovian, control of all testing and duties for Argovian, and an initial $120,000 salary from Argovian. Duffield did not enter into a written agreement to these terms because he disagreed with said pay from Argovian being contingent on him receiving no further benefit from Legend Spine. However, Duffield continued to work for Argovian full time without compensation. From the date of his expulsion, Duffield did not receive any payments or compensation from Legend Spine.

In September 2018, Marinelli, the CEO, created a business plan to help attract prospective investors. The business plan included a valuation of $15,000 per Class A unit. The trial court summarized the following relevant facts post-expulsion:

_____

[2] Black was at the meeting and purported to vote for Duffield's expulsion. However, as a non-member his vote had no legal effect. Nevertheless, the members of Legend Spine, Wagener, Karpowicz, and Marinelli, unanimously voted to expel Duffield. Black was later admitted as a Class A member of Legend Spine on January 1, 2021.

In 2020, Legend Spine was developing a third medical device spinal product. The product development was halted, a decision made by Karpowicz, Marinelli, Wagener, and Black because they claimed testing (which would have been performed by Argovian at no cost) cost approximately $50,000.00. That same year, Marinelli and Karpowicz paid themselves three times what testing would have cost, $150,000.00. Marinelli stated that he could not forego a paycheck to launch the product; however, he expected that W. Duffield should forego not only any payment for his shares in Legend Spine, but also for his full-time work at Argovian testing Legend Spine products. Marinelli admitted that he put his "own personal interests ahead of the company." [N.T., 8/2//23, at 9.]

Marinelli and Karpowicz paid themselves $380,000.00 from Legend Spine between 2018 and 2021 but could not develop new lines of products to increase revenue during that time. Before his expulsion in 2018, W. Duffield objected to these activities and not growing the business. [By] [a]cting in [their own] self-interest and not the company's best interest[,] [] Karpowicz and Marinelli's compensation payments tripled [shortly after W. Duffield's removal in August of 2018]. Obviously, [Duffield] did not have an opportunity to vote on their [newly increased] compensation payments after his expulsion. [Rather, i]t was Karpowicz, Black, [Marinelli,] and Wagener[`s choice to increase their] compensation payments [which] dr[ove] Legend Spine further into the ground. [T]he same members [also] decided not to develop the third spinal product which could have generated money for Legend Spine, [and] instead tripl[ed] their income for 2019.

Verdict Memorandum, 12/14/23, at 7-8 (unpaginated) (footnotes omitted)

Duffield initiated the present action by filing a complaint against Appellants on August 14, 2019. He filed an amended complaint on February 5, 2021. The parties filed responsive pleadings, engaged in discovery, entered a stipulation of undisputed facts, and filed pre-trial memorandums.

A four-day non-jury trial was held on July 31, 2023, August 1, 2023, August 2, 2023, and August 3, 2023. Karpowicz, Marinelli, Black, and Duffield testified. Duffield also presented the testimony of Keith Gordon, CPA, as an

expert witness for the valuation of his Legend Spine shares. Appellants moved to strike Gordon's testimony on the grounds that he did not provide the standards he used to support his opinion, which was overruled, and then Appellants' counsel cross-examined Gordon. Appellants did not present an opposing valuation expert.

The parties presented their closing arguments on September 15, 2023. On December 14, 2023, the trial court issued its verdict and found in favor of Duffield for the following claims: (1) Breach of fiduciary duty and shareholder oppression regarding Legend Spine; (2) Breach of contract of the Legend Spine operating agreement; (3) Breach of fiduciary duty and shareholder oppression regarding Argovian; (4) Breach of contract of the Argovian operating agreement; and (5) The request for accounting of Argovian. Verdict, 12/14/23, at ¶¶ 4-5, 7-9. The trial court awarded Duffield $2,500,000 in damages for the claims involving Legend Spine; Repayment of the loan made by Duffield to Argovian and equal distributions from 2018 until the verdict for the claims involving Argovian; and $98,602.55 in attorney fees. *Id.* at ¶¶ 10-12.

Wagener filed a post-trial motion on December 22, 2023, and the remaining Appellants filed their post-trial motion on December 26, 2023. Duffield filed a response and Wagener and Appellants filed memorandums of law. The post-trial motions were denied by operation of law on April 20, 2024. However, the trial court held oral argument and, on October 18, 2024, issued

an order denying the post-trial motions. On October 22, 2024, upon praecipe from Duffield, judgment was entered.

Wagener and Appellants appealed.[3] They both filed separate court ordered concise statements of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). The trial court wrote two 1925(a) opinions for Wagener and Appellants in support of its verdict.[4] However, the trial court acknowledged that it did not apportion damages among the jointly and severally liable Appellants and requests a remand solely to apportion the damages among Appellants. **See** Trial Court Opinion, 1/15/25, at 37.

Appellants raise the following issues for our review.

1. Did the trial court err by concluding that the Legend Spine [Appellants'] claims for post-trial relief were waived because they failed to comply with Pa.R.C.P. 227.1 when the trial court's actions precluded them from doing so?

2. When an LLC Operating Agreement specifies that

a. "[I]n the event of voluntary Withdrawal or [involuntary] dissociation ... within twenty-four (24) months from the Effective Date . . . the Units held by such Member **shall be immediately forfeited** and allocated among the other Class A Members on a pro-rata basis[;]"

_____

[3] Wagener and Appellants filed separate notices of appeal. Appellants' notice of appeal was filed 31 days after the entry of judgment. However, Appellants' appeal was timely because it was filed within 14 days of Wagener's timely notice of appeal. **See** Pa.R.A.P. 903(b). On May 20, 2025, we granted Appellants' motion to consolidate the cases as joint appeals. **See** Order, 5/20/25; Pa.R.A.P. 512.

[4] The trial court's analysis in both opinions is identical. Thus, we only cite to the opinion pertaining to Appellants.

b. The Operating Agreement specifies that notice is not required to be given of a meeting where a Member cannot vote; and

c. A member was expelled within 24 months of the Effective Date of the Agreement[.]

Did the trial court err by finding that [Appellants] breached the Operating Agreement when they voted to expel [Duffield] and did not pay [Duffield] the value of his shares when the expulsion occurred?

3. Did the trial court err in awarding [Duffield] attorney's fees and damages without any basis (a) in the LLC Operating Agreement, (b) by statute, or (c) any other authority?

4. Did the trial court err when there was no evidence that [Appellants] breached a fiduciary duty to [Duffield] or committed an act of shareholder oppression against [Duffield] (a) while he was a member of Legend Spine, and (b) following his expulsion from Legend Spine?

Appellants' Brief, at 7-8 (emphasis in original).

Similarly, Wagener raises the following issues for our review.

1. Where an LLC Operating Agreement expressly provides both that a member may be expelled without notice and without cause, and that the member forfeits his shares if the expulsion occurs within two years of the company's inception, did the trial court err in finding that LLC member Wagener breached the Operating Agreement when he voted to expel [Duffield] and did not pay [Duffield] the value of his shares when the expulsion occurred within the first two years of the company's existence?

2. In the absence of proof that Wagener engaged in self- dealing or acted in bad faith, and where the record established that Wagener faithfully abided by the terms of the LLC's Operating Agreement, did the trial court err in finding that Wagener breached his fiduciary duty to [Duffield] or engaged in "shareholder Oppression" simply because he voted to expel [Duffield] from the LLC?

3. Where no statute, contract or other basis exists for an award of attorneys' fees (and, thus, the "American Rule" applies), and where [Duffield] failed to adduce competent, non-speculative expert testimony supported by a generally accepted methodology to support his damages claim, did the trial court err and/or abuse its discretion in awarding [Duffield] both attorneys' fees and damages in the respective amounts of $ 98,602.55 and $2.5 million?

4. Where the verdict, fairly reviewed in light of the specific language of the Operating Agreement and the evidence presented, does not support a breach of any duty or shareholder oppression, causation, or damages, must the verdict be set aside on weight of the evidence grounds?

5. Whether the trial court erred and/or abused its discretion where it failed to apportion damages attributable to [Duffield's] breach of contract and breach of fiduciary duty claims, and where it failed to apportion liability among [Appellants]?

Wagener's Brief, at 7-8.[5]

Our standard of review for a trial court's non-jury verdict is well-established.

Our review of the trial court's decision after a non-jury trial is limited to determining whether the findings of the trial court are supported by the competent evidence and whether the trial court committed error in the application of law. It is not our role to pass on the credibility of witnesses, as the trial court clearly is in the superior position to do so.

***Ramalingam v. Keller Williams Realty Grp., Inc.***, 121 A.3d 1034, 1041

(Pa. Super. 2015) (citation omitted).

---

[5] There is substantial overlap between the arguments raised by Appellants and Wagener. Unless stated otherwise, Wagener also raises the same arguments as Appellants. We will separately address any arguments raised solely by Wagener where necessary.

At the outset, Appellants reject the trial court's conclusion, and Duffield's argument, that their claims for judgment notwithstanding the verdict ("JNOV") in their post-trial motions were waived for failing to comply with Pennsylvania Rule of Civil Procedure 227.1. **See** Appellant's Brief, at 33-37.

The trial court stated, and Duffield argues, that Appellants' and Wagener's requests for JNOV were waived because they were raised for the first time in their post-trial motions and the post-trial motions failed to assert how the grounds were asserted in pre-trial proceedings or at trial. **See** Trial Court Opinion, 1/15/25, at 24-28; Appellee's Brief, at 14-18. Duffield also argues that contrary to Appellants claim, Appellants had ample opportunity to raise a motion for a directed verdict during trial. **See id.** at 15-17.

Appellants concede that they never moved for a directed verdict during trial. However, they argue we should not find waiver because the trial court precluded them from moving for a directed verdict and the record was adequately developed for the trial court to correct the errors raised by Appellants. **See** Appellant's Brief, at 33-37. Wagener adds that his failure to request JNOV did not result in waiver because Rule 227.1(b)(1) requires it to be raised in pre-trial proceedings or at trial only "if then available" and the trial court's conclusions of law were only available post-trial. **See** Wagener's Brief, at 24.

Pennsylvania Rule of Civil Procedure 227.1 states,

(b) Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

Pa.R.C.P. 227.1(b)(1)-(2). "The purpose for Rule 227.1 is to provide the trial court with an opportunity to correct errors in its ruling and avert the need for appellate review." **Chalkey v. Roush**, 805 A.2d 491, 494 (Pa. 2002) (citation omitted).

In relation to a post-trial motion for JNOV:

There are two bases upon which a [JNOV] can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

**Mirizio v. Joseph**, 4 A.3d 1073, 1079 (Pa. Super. 2010) (citation omitted).

"Ordinarily, to preserve the right to request [JNOV], a party must first request a binding charge to the jury or move for a directed verdict or compulsory nonsuit. A motion for a directed verdict is appropriate even in the non-jury trial context." **Bank of Am., N.A. v. Scott**, 271 A.3d 897, 903 n.4

- 11 -

(Pa. Super. 2022) (citation omitted); *see also Corvin v. Tihansky*, 184 A.3d 986, 990 (Pa. Super. 2018) ("This Court requires a motion for directed verdict during trial as a prerequisite to a post-trial motion for JNOV based on the state of the evidence.") (citation omitted). However, we have declined to find waiver of a post-trial JNOV for the appellants' failure to move for a directed verdict where the trial court did not find waiver and addressed the issue. *See Scott*, 271 A.3d at 903 n.4. We have also declined to find waiver where the trial court prevented the litigant from preserving the issue. *See Mirizio*, 4 A.3d at 1089 n.4 (declining to find issue waived by the appellant's failure to file the required exception at trial where the appellant attempted to file an exception but the trial court prevented counsel from doing so because it mistakenly believed that counsel had already preserved the issue).

On the final day of trial, during Appellants' presentation of their case, the trial court stated the following regarding the remainder of the proceedings:

> THE COURT: Oh, you got a lot of work to do between now and closings, including memorandums of law and key issues—
>
> . . . .
>
> THE COURT: I'll bring you back for closings if we get all the testimony done. If you conclude the testimony, I'll bring you back for closing, but after I give you some key issues that you need to give me some memorandums of law, because I have very few memorandums of law, real memorandums of law, okay?

N.T., 8/3/25, at 125-126.

Later, at the end of that day, the trial court stated,

- 12 -

> Earlier I said I was going to have you do some writing and make some motions of law, I have no need for you to do that. So, **I'm not going to accept, nor do I want any Memorandums of Law or any communication with me other than communicate with my staff the date and time of the closing arguments**.

*Id.* at 187-188 (emphasis added).

Under these circumstances, we decline to find waiver. While Appellants' counsel could have still moved for a motion for a directed verdict, counsel was arguably prevented from doing so from the trial court's instruction to not file any motions before closing argument. Accordingly, Appellants' failure to file a motion for a directed verdict did not waive their post-trial motions for JNOV. *See Mirizio*, 4 A.3d at 1089 n.4.

The first substantive issue raised by Appellants concerns the interpretation of the Legend Spine operating agreement. Appellants argue that they acted in accordance with the operating agreement because the Class A member who is the subject of the expulsion vote is not entitled to notice of the meeting. *See* Appellants' Brief, at 30, 39-40.[6] Further, Appellants argue that, under the operating agreement, Duffield was not entitled to any compensation for his expulsion. *See id.* at 40-47.

---

[6] Appellants also argue that Duffield had notice of the meeting. *See* Appellants' Brief, at 40 (citing N.T., 8/1/23, at 39-40). Our review of the record reveals that Duffield did not have notice of the expulsion meeting. *See* Joint Stip., at ¶ 22. At most, Duffield was aware of a routine weekly meeting on that day but not that the meeting was for a vote on his expulsion. *See* N.T., 8/1/23, at 38-41. Thus, any argument that Duffield had notice of a meeting *for his expulsion* is contradicted by the record.

The trial court concluded that Appellants violated the operating agreement by failing to give Duffield notice of the meeting where the other members voted to expel him because Section 14.11(b) states that an expulsion vote shall only occur "[a]t a duly constituted meeting of the Class A members specifically noticed for such purpose." Verdict Memorandum, 12/14/23, at 16-17 (unpaginated). Further, the trial court concluded that the operating agreement was silent as to the value a member receives if expelled without cause and thus, under Section 8844(e) of the LLC Act, Duffield was entitled to receive "the fair value of the interest of the member in the company as of the date of dissociation based upon the right of the member to share in distributions from the company." *Id.* at 17-18 (quoting 15 Pa.C.S.A. § 8844(e)(2)).

Similarly, Duffield argues that the expulsion vote was not in accordance with the terms of the operating agreement. **See** Appellee's Brief, at 21-26. Specifically, he argues that paragraphs 14.11(b) and 14.11(c) of the operating agreement do not allow Appellants to expel him without compensation. **See id.** at 21-23. He argues that, although the operating agreement did not give him a vote on his expulsion, it still required him to be given notice of the meeting. **See id.**

An operating agreement is a contract between the members of an LLC. **See Toth v. Toth**, 324 A.3d 469, 486 (Pa. Super. 2024), *appeal denied*, 337 A.3d 960 (Pa. 2025). "[T]he interpretation of a contract is a question of law[;]

. . . our standard of review is *de novo* and our scope of review is plenary." ***Vinculum, Inc. v. Goli Techs., LLC***, 310 A.3d 231, 242 (Pa. 2024) (citations omitted). "In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." ***CM Goat, LLC v. Valdez***, 318 A.3d 392, 397 (Pa. Super. 2024) (citation omitted).

Regarding the notice requirement, we agree with Appellants' interpretation of the operating agreement. Section 7.3 states that notice must be provided only "to each Class A Member entitled to vote on the matters to be considered . . . ." Operating Agreement, 8/22/17, at § 7.3. Section 14.11(b) states that "the Member that is the subject of the expulsion shall not vote[.]" Operating Agreement, 8/22/17, at § 14.11(b). Thus, it follows that the Class A member who is expelled is not entitled to notice of a meeting held for the expulsion vote. Accordingly, we are constrained to conclude that the trial court erred in finding that Duffield was entitled to notice of the expulsion vote meeting and that Appellants breached the operating agreement.

However, this does not end our inquiry because, despite the trial court's misinterpretation of the operating agreement, we find no error with the trial court's conclusion that Appellants breached their fiduciary duty to Duffield.

Appellants argue, in conclusory fashion, that the trial court erred in concluding that Appellants breached their fiduciary duty to Duffield by expelling him based on their actions after Duffield was expelled, because once

Duffield was expelled from Legend Spine, Appellants no longer owed him a fiduciary duty. *See* Appellants' Brief, at 67. Wagener adds that the trial court finding him liable for breach of fiduciary duty based on a purported breach of the operating agreement runs afoul of the gist of the action doctrine, there was no evidence that he received any benefit from Duffield being expelled, and the trial court's findings regarding breach of fiduciary duty concern the other Legend Spine members, not himself. *See* Wagener's Brief, at 37-39.

Duffield argues that the trial court properly found that Appellants breached their fiduciary duty by expelling him based on their actions after his removal that were in their own self-interest and not Legend Spine's best interest. *See* Appellee's Brief, at 32. Further, Duffield argues that the trial court properly imposed liability on Wagener because, by participating in the squeeze out, he aided and abetted the breach of fiduciary duty owed to Duffield. *See id.* at 33-34.

"It is axiomatic that majority shareholders have a duty not to use their power in such a way to exclude minority shareholders from their proper share of benefits accruing from the enterprise." *Viener v. Jacobs*, 834 A.2d 546, 556 (Pa. Super. 2003) (citation omitted). "[A]n attempt by a group of majority shareholders to 'freeze out' minority shareholders for the purpose of continuing the enterprise for the benefit of the majority shareholders constitutes a breach of the majority shareholders' fiduciary duty to the minority shareholders." *Linde v. Linde*, 220 A.3d 1119, 1142 (Pa. Super.

2019) (citation omitted). "This does not mean, of course, that majority shareholders may never act in their own interest, but when they do act in their own interest, it must be also in the best interest of all shareholders and the corporation." *Id.* at 1140 (citation omitted). "[T]he fiduciary duty of majority shareholders has been construed variously as an action sounding in equity or tort." **Schriver v. Schriver**, 316 A.3d 153, 159 n.7 (Pa. Super. 2024), *appeal denied*, 331 A.3d 519 (Pa. 2024) (citation omitted). "In either case, equitable relief is available." *Id.* (citation omitted).

As stated above, the trial court explained how, after Duffield was expelled, Appellants personally benefitted from increased compensation at the expense of Legend Spine's business. **See** Verdict Memorandum, 12/14/23, at 7-8 (unpaginated). The trial court further explained:

> Marinelli, Karpowicz, Wagener and Black's conduct involving the improper expulsion is shareholder oppression and a breach of their fiduciary duty to him as a minority. Shareholder oppression can take many forms, and tactics employed against a minority shareholder to effect such a 'freeze-out' include, but are not limited to: generally oppressive conduct, the withholding of dividends, restricting or precluding employment in the corporation, paying excessive salaries to majority stockholders, withholding information relating to the operation of the corporation, appropriation of corporate assets, denying dissenting shareholders appraisal rights, failure to hold meetings and excluding the minority from a meaningful role in the corporate decision-making. [**See Retina Assocs. of Greater Phila. v. Retinovitreous Assocs.**, 176 A.3d 263, 275 (Pa. Super. 2017).]
>
> Further, pursuant to the LLC Act, the other members shall be held personally liable for monetary damages to the company because their willful misconduct was a breach of their duty of good faith and fair dealing in discharging the obligations under the Legend Spine Operating Agreement. [**See** 15 Pa.C.S.A. § 8849.1.] The

members decided, against the Legend Spine Operating Agreement, not to properly notify W. Duffield, not to give him a vote on his expulsion, and then decided not to pay him fair market value for his units. They did so knowingly and willfully. After the expulsion, they acted in self-interest and not in the best interest of the company paying themselves instead of developing product lines.

With respect to Argovian, the same is true. Marinelli, Karpowicz, and Black's conduct amounted to shareholder oppression. They refused to have Legend Spine pay for Argovian's testing services, they refused to pay W. Duffield for his full-time work. When W. Duffield and G. Duffield attempted to pay themselves guaranteed payment for income, Marinelli, Karpowicz, and Black removed access to Quickbooks, and drained Argovian's bank account. W. Duffield was expected to work [for Argovian] without getting paid; meanwhile, Marinelli and Karpowicz are driving Legend Spine into the ground to pay themselves.

The day after his removal from Legend Spine, W. Duffield [was] removed from operational management as evidenced by the creation of a new text chat created [by] the other members. The text chat discusses how they can keep W. Duffield out of the Argovian Operation based on their understanding of the Argovian Operating Agreement. The messages discuss that the Argovian Operating Agreement requires only a majority vote and not unanimous and that is how they can get Argovian to perform Legend Spine's testing at no cost without W. Duffield agreeing to it. After W. Duffield attempted to take a guaranteed payment, Karpowicz, Marinelli and Black [had] their counsel send a letter advising his removal and stating he should not be going to the office.

Verdict Memorandum, 12/14/23, at 18-20 (unpaginated) (footnotes omitted).

We have previously held that majority shareholders squandering business assets and opportunities for their own personal benefit after freezing out a minority shareholder constitutes a breach of a fiduciary duty. *See Vierner*, 834 A.2d at 556. That was the situation here. After Duffield was expelled, Appellants reaped the benefits of increased salaries at the expense

of developing Legend Spine's products. **See** Verdict Memorandum, 12/14/23, at 7-8, 18-20 (unpaginated). Therefore, we conclude the trial court did not err in finding that Appellants breached their fiduciary duty to Duffield by expelling him. This issue does not merit relief.[7]

Next, we address Appellants' challenge to the trial court's award of $2,500,000 in damages. Appellants argue that Section 14.13 of the operating agreement expressly precludes Duffield from receiving compensation since he was expelled within 24 months of the formation of Legend Spine. **See** Appellants' Brief, at 43-47. Further, Appellants argue that the expert testimony that the trial court relied upon in determining damages was incompetent and not credible. **See id.**

The parties dispute whether Section 14.13 applies to only voluntary withdrawals or also expulsions. This is irrelevant because the pertinent issue

_____

[7] Wagener's argument invoking the gist of the action doctrine is also without merit. "The mere existence of a contract between two parties does not, *ipso facto,* classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." **B.G. Balmer & Co. v. Frank Crystal & Co., Inc.**, 148 A.3d 454, 469 (Pa. Super. 2016) (citation and bracket omitted). Further, "if the contract creates a relationship that in turn implies a common-law duty, the contract is collateral to that common-law duty, and the gist-of-the-action doctrine does not apply." **Bert Co. v. Turk**, 257 A.3d 93, 110 (Pa. Super. 2021), *affirmed*, 298 A.3d 44 (Pa. 2023) (citation omitted). Fiduciary duties of a majority member to a minority member are separate and distinct from contractual duties in an operating agreement. **See B.G. Balmer**, 148 A.3d at 472 n.11. By entering into the operating agreement with Duffield, Appellants owed him fiduciary duties. **See** 15 Pa.C.S.A. § 8849.1. Therefore, Duffield's claim for breach of fiduciary duty was not barred by the gist of the action doctrine.

is that the trial court found that Appellants breached their fiduciary duties to Duffield by committing shareholder oppression. This duty of care is set forth in the operating agreement and the LLC Act. **See** Operating Agreement, at § 6.7[8]; 15 Pa.C.S.A. § 8849.1. To the extent that Section 14.13 permits a member's forfeiture of their ownership shares without compensation if they are expelled within the first 24 months of the formation of Legend Spine, such expulsions must be undertaken in accordance with the members' fiduciary duties. As previously explained, that did not happen here. Therefore, because the terms of the operating agreement did not preclude the trial court from awarding damages under the circumstances present here, this issue lacks merit.

We next address Appellants' challenge to the trial court's reliance on the expert witness's valuation of Duffield's shares in Legend Spine in awarding damages. Appellants argue that the trial court should have granted its motion to strike Gordon's expert testimony because he failed to provide the authority

_____

[8] Section 6.7 of the operating agreement states,

> **6.7 Standard of Conduct.** Each Member shall discharge his duties as a Member in good faith, in a manner the Member reasonably believes to be in the best interest of the Company and with the care an ordinary prudent person in a like position would exercise under similar circumstances. . . .

Operating Agreement, 8/22/17, at § 6.7.

that supported his conclusions and his testimony was not credible. *See* Appellants' Brief, at 51-65.

Pennsylvania Rule of Evidence 702 sets forth the standard for the admissibility of expert testimony.

> If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702.

Accordingly, "[a]n expert's opinion must be supported by references to facts, testimony or empirical data[.]" *Downey v. Crozer-Chester Med. Ctr.*, 817 A.2d 517, 528 (Pa. Super. 2003) (*en banc*) (citation omitted).

> Thus, the minimal threshold that expert testimony must meet to qualify as an expert opinion rather than merely an opinion expressed by an expert, is this: the proffered expert testimony must point to, rely on or cite some scientific authority—whether facts, empirical studies, or the expert's own research—that the expert has applied to the facts at hand and which supports the expert's ultimate conclusion.

*Snizavich v. Rohm & Haas Co.*, 83 A.3d 191, 197 (Pa. Super. 2013).

For the valuation of businesses, Pennsylvania courts have distilled the relevant factors to be considered into "three principal methods of valuation[:]" net asset value, actual market value, and investment value. *In re Watt & Shand*, 304 A.2d 694, 698 (Pa. 1973).

The trial court detailed how Gordon met this threshold.

> Here, [Gordon] was admitted as "an expert in providing valuation of a small business like this one." It is worth [noting] that neither

the Legend Spine [Appellants] nor Wagener objected to Gordon's qualification as an expert. Further, neither the Legend Spine [Appellants] nor Wagener provided their own expert to opine on the fair market value of W. Duffield's interest in Legend Spine.

Gordon testified that in determining the fair market value of [Duffield's] 19.3% interest in Legend Spine, he relied on the "market approach, which was based on transactions occurring around the date of the business valuation." However, Gordon also testified that he considered all three approaches and determined that the market approach was the most appropriate for this situation. While Gordon primarily relied on the market approach — which was proper, due to multiple arm's length transactions at $15,000.00 per share — he also testified that he both added a premium for voting rights and a discount for the lack of marketability to arrive at an adjusted value for W. Duffield's shares. Gordon also testified that he rendered his opinion within a reasonable degree of professional certainty.

. . . .

[Additionally], on direct examination, Gordon testified that the basis for and scope of his expert opinion was his expert report. Gordon also explained that his expert opinion was in agreement with "industry guidance," specifically regarding a premium for voting shares. Gordon also testified about all three approaches to business valuation, . . . . Further, when discussing his calculation of the valuation of W. Duffield's shares, Gordon [] referred to page nine of his expert report, which discusses empirical studies and the International Glossary of Business Valuation Terms. . . .

Trial Court Opinion, 1/15/25, at 30-31, 33-34 (footnotes omitted).

Appellants argue that, based on Legend Spine's business structure and limited stock sales, the method used by Gordon was inappropriate. However, this argument goes to the weight of the evidence. *See Thorson v. EDDW, LLC*, 309 A.3d 141, 151 (Pa. Super. 2024), *appeal denied*, 327 A.3d 611 (Pa. 2024) ("Appellants presented no evidence which refuted [the expert's] testimony. To the extent that Appellants took issue with his credibility,

methods, and conclusions, those arguments would go to the weight of [the expert's] testimony and not its admissibility as an expert opinion.") (citation omitted). Where the trial court sits as fact finder, it is within the trial court's discretion to accept or reject an expert witness's testimony. **See Linde**, 220 A.3d at 1151.

Based on our review of the record, we find that the trial court's findings are supported by the record and it did not err in relying on Gordon's expert testimony to determine the valuation of Legend Spine and assess damages. Therefore, this issue lacks merit.

In their final issue, Appellants argue that the trial court erred in awarding Duffield attorney's fees because there is no statutory authority, agreement between the parties, or any other exception that permits attorney's fees. **See** Appellants' Brief, at 65-66. Wagener adds that Section 14.5(b) of the operating agreement permits recovery of attorney's fees only for "a Transfer or attempted Transfer of a Membership Interest or Assignee Interest that is not a Permitted Transfer," which does not apply because, according to Wagener, Duffield agreed to forfeit his shares. Wagener's Brief, at 45-46. Duffield argues that he was entitled to attorney's fees based on the operating agreement, the LLC Act, and as punitive damages. **See** Appellee's Brief, at 49-52. Further, Duffield argues that, although the trial court did not expressly detail its basis for the attorney's fees award, the trial court did not abuse its

discretion in awarding attorney's fees because it heard argument and testimony regarding attorney's fees. *See id.* at 49, 52.

"In reviewing a trial court's award of attorneys' fees, our standard is abuse of discretion." *Pelissero v. Seraly*, 247 A.3d 433, 438 (Pa. Super. 2021) (citations omitted). "[T]he general rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct." *Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 983 (Pa. Super. 2023) (citation omitted). "This so-called 'American Rule' holds true unless there is express statutory authorization, a clear agreement of the parties or some other established exception." *Id.* (citation omitted).

We note that in its verdict the trial court merely stated that "[t]he [c]ourt awards [Duffield] attorney fees in the amount of $98,602.55." Verdict, 12/14/23, at ¶ 12. However, neither in the verdict memorandum nor the trial court's 1925(a) opinions does the trial court explain its basis for awarding attorney's fees or its calculation of the fees. Therefore, we are constrained to vacate the trial court's award of attorney's fees and remand for reconsideration and explanation of the amount awarded.[9]

_____

[9] Lastly, the trial court requests, and Wagener argues, that we remand for the trial court to apportion responsibility among Appellants. *See* Trial Court Opinion, 1/15/25, at 37; Wagener's Brief, at 49-51. We are not persuaded that is necessary. "Joint tortfeasors generally are jointly-and-severally liable for the entire amount of a verdict, albeit that a jury may assign only a portion

*(Footnote Continued Next Page)*

In sum, because the operating agreement did not require that Appellants give Duffield notice of the meeting where they voted on his expulsion, we are constrained to conclude the trial court erred in ruling in Duffield's favor on his breach of contract claim. However, we affirm the trial court's ruling that Appellants breached their fiduciary duty to Duffield by freezing him out of Legend Spine for their own self-interest. The trial court's award of damages was supported by competent expert testimony and Appellants' challenge to the weight of that testimony fails. However, we are constrained to vacate the trial court's award of attorney's fees because the trial court did not explain its basis for awarding them. On remand, the trial court shall reconsider its basis for attorney's fees, and if appropriate, explain why it is awarding attorney's fees.

Accordingly, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

Judgment affirmed in part, reversed in part, and vacated in part. Remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

_____

of fault to each." ***Maloney v. Valley Med. Facilities, Inc.***, 984 A.2d 478, 489 (Pa. 2009). Wagener does not offer a persuasive argument for why apportionment is necessary in this case. Therefore, on remand, we do not direct the trial court to apportion responsibility among Appellants.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/11/2026